————o————

STATE OF MISSOURI *ex rel.* PETER O'SULLIVAN, Defendant in Error, *vs.* A. M. COFFEE, Plaintiff in Error.

1. *Town charter passed prior to constitution—Amendment of subsequently, when unconstitutional—Quo warranto against mayor claiming under amended law—Proper remedy, when.*—An amendatory act merely extending the limits of a town incorporated prior to the present constitution, is not in conflict with § 5, Art. VIII. of that instrument, which prohibits the creation of municipal corporations, except cities, by special act. But where the amendatory act, includes no part of the limits embraced in the original act, but is in itself, in fact, a new and complete charter, organizing a town entirely distinct in territory and population, the amendatory act is void under that section. In such case although the act is void, yet where the town corporation claims an organization and existence under it, *quo warranto* will lie against an individual for usurping the office of mayor; and in that proceeding the question of corporate existence of the town can be tried and passed upon. It is immaterial, so far as such proceeding is concerned, whether brought against officers who usurp a corporation franchise, or an individual who usurps an office created under the franchise, except that in the former case, suit must be against defendant, in their corporate name.

State ex rel. v. Coffee.

*Error to Johnson Court of Common Pleas.*

*Lay & Belch, with E. A. Nickerson,* for Plaintiff in Error.

I. A charter can be amended by excluding part and adding new territory. (St. Louis vs. Russell, 9 Mo., 503; St. Louis vs. Allen, 13 Mo., 400; Dill. Mun. Cor., §§ 35, 124.)

II. It is now admitted that the act of March, 1870, does not comprehend any part of the territory included in the act of 1859, but takes in territory lying south of the old corporate limits, and adjoining thereto. · But the act of 1870 does not repeal the 1st section of the act of 1859. They are not repugnant, but make one complete, harmonious act. It may have been better had the whole boundary been described in the amendment; but the legislature may well have concluded that it was simply necessary to include in the amendment the additional territory to be added to the old corporate limits.

*Eliot & Blodgett with W. N. Pickerell,* for Defendant in Error.

I. The act of March, 1870, is not an amendment, in any sense, to the act of December, 1859. It is an attempt to create a new corporation, for town purposes by a special act, out of new territory, and is therefore in plain derogation of § 5, Art. VIII, of the constitution, which provides that "no municipal corporation except cities, shall be created by special act; and no city shall be incorporated with less than five thousand permanent inhabitants, nor unless the people thereof, by a direct vote upon the question shall have decided in favor of such incorporation."

·VORIES, Judge, delivered the opinion of the court.

This is an information in the natue of a *quo warranto* filed in the Johnson Court of Common Pleas by the Circuit attorney of the 22nd Judicial Circuit of this State, to inquire into the authority by which the defendant exercised the duties of the office of mayor of the town of Knob Noster, in said county of Johnson.

The petition is in the usual form, charging that the defendant, unlawfully and without authority of law, exercised and usurped the powers and duties of said office, by issuing warrants, etc., and otherwise assuming to act in said capacity, and prayed for a judgment of ouster, etc.

The defendant, by his return to the writ issued on this information, admits that he is exercising the powers and duties of the office of mayor of said town, and states that said town is a corporation organized under an act of the General Assembly of the State of Missouri, entitled "An Act to incorporate the town of Knob Noster in Johnson County, Missouri," approved Dec. 14th, 1859, whereby all that district of county within the following boundaries was declared to be a body corporate, by the name and style of the town of Knob Noster, to-wit: beginning at the north-east corner of the north-west quarter of the north-west quarter of section fifteen, township forty-six, range twenty-four, thence west on the section line three-fourths of a mile, thence south one half mile, thence east three-fourths of a mile, thence north one half mile to the place of beginning;" and that said town so organized, was invested with all of the rights and privileges, and subject to all of the liabilities, of a municipal corporation.

The return of the defendant then states, that after the town was incorporated, several additions to said town had been laid out into lots, streets, etc., and plats thereof duly made and filed, by which the same had become additions to the said town of Knob Noster, all of which is set forth in detail, after which the return proceeds as follows:

"That by virtue of an act of the General Assembly of the State of Missouri, entitled "An Act amendatory of, and supplemental to an act entitled 'An act to incorporate the town of Knob Noster, Johnson County, Missouri,' approved Dec. 14th 1859, Approved March 16th, 1870," all of the inhabitants of the said town of Knob Noster included within the district of country described by the following bounds according to the United States surveys to-wit: beginning at the north-east corner of the north-east quarter of the south-

west quarter of section fifteen, township forty-six, of range twenty-four, running thence south one mile with sub-divisional section lines, thence west, three-fourths of a mile with the sub-divisional sectional lines, thence north one mile with sub-divisional section lines, thence east three-fourths of a mile with the sub-divisional sectional lines to the place of beginning, were constituted a body politic and corporate by the name and style of the town of Knob Noster, whereby they became entitled to all the rights, privileges and franchises, and were subject to all the liabilities of a municipal corporation.    *    *    *    *    And by virtue of said act of Assembly amendatory to the act of Dec. 14th, 1859, approved March 16th, 1870, the inhabitants of said town were, on the 14th of December, 1859, ever since have been, and now are, a body politic and corporate *dè facto* and *de jure* under the name and style of the town of Knob Noster, and did from the time aforesaid, and do now exercise all the rights and privileges of a municipal corporation established in conformity with the laws of this State; that by virtue of the second section of said amendatory act, approved March 16, 1870, the corporate powers and duties of said town of Knob Noster are united in a mayor, five councilmen, and subordinate officers; that at a legal election duly held in accordance with the provisions of the last above recited act, on the first Tuesday of April, for the year 1871, the said defendant was, by the qualified electors of said town, duly elected to the office of mayor of said town of Knob Noster and after having qualified, according to law, he then and there entered upon the discharge of his duties of his said office, and ever since has exercised and does now, by virtue of the authority conferred upon him as aforesaid, exercise and administer the office of mayor of said town; and by virtue of said office of mayor, and acting under the authority thereby given, this defendant has issued warrants for the arrest of all persons who have been guilty of violence, or charged with violating the ordinances of said town, and still claims to exercise, and does exercise all the rights, privileges and franchises, powers and authority apper-

taining to his said office as granted him by the said acts of incorporation and the ordinances thereunder enacted, etc."

To this return plaintiff demurred and set forth as grounds therefor: 1st. that the return shows no legal defense to the facts charged in the information; 2nd. that said return shows on its face that no part of the town of Knob Noster, as the corporate limits are defined by the act of December,1859, is embraced within the corporate limits of said town as defined in the act of March 16th, 1870, entitled " An act amendatory and supplemental to an act entitled 'an act to incorporate the town of Knob Noster," approved Dec. 14th, 1859 ; 4th. that that act of the General Assembly, approved March 16th, 1870, entitled " an act amendatory of and supplemental to an act entitled an act to incoporate the town of Knob Noster, Johnson County," is contrary to the express provisions of the 5th section of the 8th article of the Constitution of the State of Missouri ; that said act creates a new corporation instead of amending the charter of a corporation previously existing.

The demurrer was sustained by the court and judgment of ouster rendered against the defendant. The defendant sued out a writ of error and has brought the case to this court.

When this case was considered by this court at a previous term,* it was considered with reference to the two acts of the legislature, one incorporating the town of Knob Noster, and the other amendatory and supplemental thereof, referred to in the defendant's return, as said acts were published in the published session acts of 1859 and 1870; by which it appears that a large portion of the same territory included in the boundaries of the town of Knob Noster as defined by the act of 1859, was also included in the territorial limits of said town as defined and designated by the amendatory act of 1870. We therefore held that the act of the legislature of 1870, was properly an amendatory act changing and extending the limits of an existing corporation which had been incorporated

*As the facts and law relating to this case fully appear in this opinion, the publication of the first opinion was considered, by the judge delivering it, to be unnecessary.

previous to the adopting of our present constitution ; and that therefore, the act of 1870 was a valid act not in conflict with the fifth section of the eighth article of the present constitution of the State, and it being admitted by the pleading that the defendant was duly elected mayor of said town under said act of 1870, we reversed the judgment of the Common Pleas Court which ousted the defendant from said office.

The plaintiff, in due time, filed a motion for a re-hearing of the cause, and called our attention to the fact, that the act of 1859, as published with the published acts of the legislature for that year, was improperly published, and the boundaries of the town of Knob Noster, as therein stated, were not the true boundaries of said town as defined in the act as passed, and as the same is now on file in the office of the secretary of State. A re-hearing was granted in the case and it is now admitted by the defendant, that the boundaries of said town, as defined in the act of 1870, include no part of the corporate limits of said town as defined in the act of 1859.

It is insisted by the plaintiff, that inasmuch as the act of 1870 includes no part of the original town of Knob Noster as incorporated by the act of 1859, the act of 1870 cannot be an amendment of the act of 1859, but is an independent special act creating a new municipal corporation directly in violation of the section of the constitution of this State before referred to. The section of the constitution referred to is as follows: "No municipal corporation, except cities, shall be created by special act; and no city shall be incorporated with less than five thousand permanent inhabitants, nor unless the people thereof, by a direct vote upon the question, shall have decided in favor of such a corporation."

There is no pretense in this case, that the town of Knob Noster was incorporated as a city, with five thousand inhabitants, under the foregoing provision of the constitution. What the defendant insists, is, that the act of 1870 incorporating said town is only an amendment of the act of 1859, which last act was enacted before our present constitution, and therefore the act of 1870 amendatory thereof, does not

come within the prohibition of our present constitution. The act of December 14th, 1859, is a short one doing little more than to organize the town of Knob Noster under the general law of 1855, "for the incorporation of towns, and to prevent the circulation of town or city scrip." The first section of the act is as follows: 1st. All that district of country within the following bounds, to-wit: beginning at the north-east corner of the north-west quarter of the north-west quarter of section fifteen, township forty-six, range twenty-four, thence west on the section line, three-fourths of a mile, thence south one-half mile, thence east three-fourths of a mile, thence north one-half mile to the place of beginning, shall be a body corporate by the name and style of the town of Knob Noster; and by that name shall be known in law, have perpetual succession, sue and be sued in all courts, may hold and receive property, real and personal, and may lease, sell and dispose of the same for the benefit of said town, and may have a common seal and alter the same at pleasure."

The second section makes the provisions of the general law of 1855, before referred to, applicable to the corporation created by the first section. The other provisions of the act of 1859 are unimportant. The first section of the act of the 16th day of March 1870, which purports to be amendatory of the act of 1859, reads as follows: "Section 1st. That the act entitled 'An Act to incorporate the town of Knob Noster in Johnson County," approved Dec. 14th, 1859, be, and the same is, hereby amended so as to read as follows: Section 1. All of the inhabitants of town of Knob Noster, Johnson County, Missouri, included within the district of country described by the following bounds, according to the United States survey, to-wit: beginning at the north-east corner of the north-east quarter of the south-west quarter of section number fifteen, (15,) township forty-six (46,) range twenty-four, (24,) running thence south one mile with the sub-division sectional lines, thence west three-fourths of a mile with the sub-division sectional lines, thence north one mile with the sub-division sectional lines, thence east three-fourths of a mile

with the sub-division sectional lines, to the place of beginning, shall be, and are, hereby constituted a body politic and corporate, by the name and style of the 'town of Knob Noster,' and by that name shall have perpetual succession, and shall have power to contract and be contracted with, to sue and be sued, to plead and be impleaded in all courts and places whatsoever; to purchase, lease receive and hold property, real, personal and mixed, within the limits of said town, (and beyond said limits, for burial grounds and other public purposes for the use of the inhabitants of said town,) and may improve, lease, mortgage or sell the same for the benefit of the inhabitants aforesaid; and may also have and use a common seal and alter the same at pleasure."

The second section of this act vests the corporate powers and duties of the corporation in a mayor, five councilmen, a marshall, etc., and is followed by thirty-two additional sections, defining the rights, duties and powers, as well as prescribing the obligations and liabilities of the corporation, and repealing all laws in conflict with the provisions of the act. (Laws of 1870, p. 359.)

It will be seen, by an examination of this act of 1870, that it is a complete act of incorporation, incorporating a municipal corporation by special act. coming exactly within the prohibition of the constitution, unless it can properly be termed an amendment of the act of 1859. It will be seen that the act of 1870, includes no part of the territorial limits included in the act of 1859. It organizes an entirely new town composed of different territory and different people and just as distinct from the original town as organized by the act of 1859, as if it had been situate in an entirely different portion of the State. It is difficult to see in what sense this act of 1870 can be called an amendment to the act of 1859. It is simply an attempt to create a new corporation in evasion of the constitution, by calling it an amendment to an old corporation, and by giving it the same name. If this can be done by such means, then the prohibition in the constitution before referred to becomes a mere sham, to be evaded by

every device, no matter how transparent it might be. Such legislation cannot be upheld by the courts, and the act of 1870 must therefore be held unconstitutional and void.

It is next insisted by the defendant, that if the act of 1870 is held to be void and no corporation is created thereby, then there could be no such office as mayor of a corporation which had no existence; and that as there could be no such office, of course no one could usurp its duties; and that, therefore, *quo warranto* was not, and is not the proper remedy against the defendant. This position of the defendant is not without some foundation in reason, as well as the support of some of the adjudicated cases. In the case of King vs. Saunders, (3 East, T. R., 119,) Lord Ellenborough held, that where a corporation had been long since dissolved and no corporation claimed to have existence, the acts of one under such circumstances, claiming to be an alderman of such defunct corporation, were the mere acts of an individual, and could have no other effect than the act of any other stranger; that what he claimed was a mere nullity, there being no such office in existence. The *quo warranto* was denied. Other cases may be found to the same effect.

The case now under consideration is somewhat different from that reported in the 3rd. East. There then was no such corporation that even pretended to have any existence. Here the assumed corporation claims existence, and claims to have been properly organized under the act of the legislature, and the defendant claims to have been elected mayor of this assumed corporation. This proceeding is against the defendant for usurping the said office of mayor. Now the question is, can the corporate existence of the town be tried and passed on in this proceeding against the defendant for usurping the office of mayor of said town. There is no doubt but that a *quo warranto* would lie against those who assume to exercise the corporate franchises of the town for the usurpation of the assumed franchises; but the question is, could such a question be settled in a proceeding against an individual for usurping the office and duties of mayor of such assumed

corporation? The proceedings, it will be found, are substantially the same whether commenced against officers who assume and usurp a franchise, or against an individual for usurping an office created under the franchise or corporation. The only difference being that where the usurpation is of a franchise, the proceeding must be against the defendants in their corporate name. (Tancr. Quo War., 262–7.) The objection in this case would therefore seem to be purely technical, and its enforcement would not tend to promote the ends of justice. In a late case in New York, (The People vs. Carpenter, 24 N. Y., 86,) a question almost exactly similar to the one here raised by the defendant was brought under consideration. The court in that case held, that the question whether a town had been legally erected, could be tested in an action in the nature of *quo warranto* against one claiming to exercise the office of supervisor of such town; the court in that case remarking that the objection, that if there was no such office, none could be usurped, was too technical. We incline to adopt the views of the court in New York. We believe that by such a view of the law, we but carry out the intention of our statute on the subject of *quo warranto*, and thereby arrive more directly at the ends of justice. Any other course would only create delay without any benefit to either party.

It need only be added that the judgment of the Common Pleas court is affirmed; the other judges concur.