STATE OF NEBRASKA, EX REL. NELSON F. LOY, V. W. L. MOTE ET AL.

FILED JUNE 2, 1896.　No. 6554.

1. Villages: ORDER OF INCORPORATION: RESIDENTS. To warrant an order by the county board incorporating certain territory as a village there must be two hundred or more actual residents of such territory.

2. ——: ——: ——. An actual resident within the meaning of the statute in relation to the incorporation of villages is one who is in a place with the intent to establish there his domicile or permanent residence, or has done so.

3. ——: ——: NUMBER OF RESIDENTS: EVIDENCE. Evidence examined, and *held* to show a less number than two hundred actual residents of the territory ordered incorporated as a village by the county board, at the date of such order.

4. ——: ——: TERRITORY. The law authorizing the incorporation of villages does not contemplate including in the corporate limits remote territory, or purely agricultural lands, not actually connected with the village and not adapted to municipal purposes. (*State v. Dimond*, 44 Neb., 154.)

5. Quo Warranto: VILLAGES. An owner of lands illegally included within the boundaries of a village can maintain proceedings by *quo warranto* to determine the validity of the order of incorporation. (*State v. Dimond, supra.*)

ORIGINAL action in the nature of *quo warranto* to oust respondents, who are exercising the powers of trustees of a village having no legal existence. *Writ allowed.*

*A. E. Barnes* and *A. G. Kingsbury*, for relator.

*J. J. McCarthy, contra.*

HARRISON, J.

On May 16, 1893, a petition was presented to the board of supervisors of Dixon county praying the incorporation of the territory therein described as a village, to be called the village of Allen. The petition had attached to it the signatures of thirty-six persons, who were said to represent and be a majority of the taxpayers within the bounds of the proposed village, and it was further made to appear by an affidavit accompanying the petition that there were 206 "actual inhabitants" of the territory which was to be included in the corporation boundaries of the village. On the same day the board of supervisors took action in the matter and made an order incorporating the territory described in the petition, naming the village "Allen" and appointing the respondents trustees for the village. The relator, who, it is claimed, at all times, when opportunity for so doing offered, objected to the incorporation, instituted through the attorney general of the state an action of *quo warranto* in this court, the object being to obtain a judgment of ouster against the defendants, the trustees of the village of "Allen." Issues were joined and on request of the parties, H. J. Porter, Esq., of Ponca, was appointed to take the evidence and report the same to the court, which has been done and the cause submitted.

The two main questions raised by the pleadings and presented for determination are (1) that a large tract of farming or agricultural land, which was not adjoining nor connected with the village proper, nor in any manner

used. for or adapted to village purposes, was included in the corporate limits by the order of incorporation, and (2) that on the 16th of May, the time the petition was presented to the board of supervisors and the order incorporating the village was made, there were not 200 actual residents within the boundaries of the municipality then erected. The portion of our statutes under which the incorporation was had was section 40, article 1, chapter 14, Compiled Statutes, which is as follows: "Any town or village containing not less than two hundred nor more than fifteen hundred inhabitants, now incorporated as a city, town, or village, under the laws of this state, or that shall hereafter become organized pursuant to the provisions of this act, and any city of the second class which shall have adopted village government as provided by law, shall be a village and shall have the rights, powers, and immunities hereinafter granted, and none other, and shall be governed by the provisions of this subdivision; *Provided*, That cities of the second class heretofore incorporated, and containing not more than fifteen hundred inhabitants, shall continue to be and exercise the powers of cities of the second class, and the officers thereof shall continue to exercise the powers conferred herein upon officers of such cities until the first general election held therein, and the qualifications of village officers elected at said election; *Provided further*, That whenever a majority of the taxable inhabitants of any town or village, not heretofore incorporated under any law of this state, shall present a petition to the county board of the county in which said petitioners reside, praying that they may be incorporated as a village, designating the name they wish to assume, and the metes and bounds of the proposed village; and if such county board or a majority of the members thereof shall be satisfied that a majority of the taxable inhabitants of the proposed village have signed such petition and that inhabitants to the number of two hundred or more are actual residents of the territory described in the petition, the said board shall de-

clare the said proposed village incorporated, entering the order of incorporation upon their records,. and designating the metes and bounds thereof; and thereafter the said village shall be governed by the provisions of this act applicable to the government of villages. And the said county board shall, at the time of the incorporation of said village, appoint five persons having the qualifications provided in section forty-two of this act, as trustees, who shall hold their offices and perform all the duties required of them by law, until the election and qualification of their successors at the time and in the manner provided in this act."

We have carefully investigated the evidence, and while it is, in some particulars, apparently conflicting, the conflict in relation to the number of actual residents within the territory which was incorporated arises, to a large extent, out of the differing opinions entertained by the witnesses in respect to what constituted an actual resident. The largest number of actual residents of the village incorporated on May 16, 1893, testified to by any of the witnesses was 206, and several of these, it was shown, had homes elsewhere, and these, with others, were in the village temporarily and with no intention of remaining permanently or making it a home. All such persons were not actual residents as required by the statute. Construing the evidence in the light of the requirements of the law in regard to the number of actual residents, it fails to show that the requisite 200 were within the territory at the time of the incorporation, and this being true, the territory could not be incorporated as a village. (*State v. Uridil*, 37 Neb., 371.)

As to the first of the questions which we have outlined as litigated herein, the evidence showed that there were about 400 acres included within the village limits as incorporated; that of this one-half or more was farming land or "pasture land," and in use for the purposes indicated, and it was not shown how it would be benefited in any manner by being made a part of the municipality

State v. Mote.

and subject to its government. The land owned by the relator, it was stated, was, at its nearest point, about forty rods from the platted portion of the village and was a portion of his farm and in use for farming purposes. A glance at a copy of the plat of the village as bounded by the order of incorporation of May 16, 1893, will convince any one that the lines of the village were so run as to give to the village at least a somewhat peculiar shape in order to include the land belonging to the relator and his neighbor Pomeroy.

It appears from the evidence that one reason which moved the parties who were active in forwarding the incorporation to include the relator's property was that he was living thereon with his family, including the relator, nine persons, and they needed them within the limits to help make up the necessary 200 actual residents required by statute. It was shown that portions of farms not connected with the village proper and not platted or appropriated or adapted to municipal purposes were included within the corporate limits by the order of incorporation, and of such was the portion of the farm of relator, hence it was illegally included. (*State v. Dimond*, 44 Neb., 154, and cases cited.) The village organized had

no legal existence and *quo warranto* was the appropriate action. (*State v. Uridil, supra.*) A judgment of ouster will be rendered and for costs against the respondents.

WRIT ALLOWED.