STATE, EX REL. FRANK TANNER ET AL., APPELLANTS, V. S. K. WARRICK ET AL., APPELLEES.

FILED OCTOBER 14, 1921. No. 22021.

1. **Schools and School Districts:** HIGH SCHOOL DISTRICTS: ANNEXATION OF TERRITORY: APPROVAL. In a proceeding to annex territory to an existing high school district under the proviso in section 6, ch. 243, Laws 1919, the approval of such annexation by the board of education of the district to which it is sought to annex such territory is, after the declaration of annexation by the county superintendent of schools, the only approval or consent necessary to be given and no action is required to be taken by the authorities of other school districts affected.

2. ———: ———: ———: NOTICE. In such proceedings notice to the school boards of the other districts affected is not required.

3. ———: ———: BOUNDARIES: NOTICE. The terms of the statute which provide for a hearing on the initial question of fixing the boundaries of consolidated districts by the redistricting committee furnish sufficient notice to all parties interested of the proposed boundaries of the district.

4. ———: ———: ANNEXATION OF TERRITORY: PETITION: WITHDRAWAL OF NAMES. Petitioners for the annexation of territory to an existing high school district, under section 6 of the act above mentioned, may withdraw their names from the petition by written request at any time before action has been taken by the county superintendent.

5. ———: ———: ———: ———: ———. After such declaration has been made and communicated to the parties mainly interested, it is too late to withdraw their names, even though the declaration was not reduced to writing immediately.

6. **Evidence:** PAROL EVIDENCE: ACTS OF PUBLIC OFFICIALS. Where the statute does not require a record to be made of official acts of a public officer, parol proof is competent and admissible to show that action was taken and the nature of such action.

7. **Schools and School Districts:** HIGH SCHOOL DISTRICTS: ANNEXATION OF TERRITORY: PETITION: WITHDRAWAL OF NAMES. The fact that withdrawals from such a petition were made before approval by the board of education of the "existing high school district" to which it is sought to annex territory is not material, since the determination of the number and eligibility of the signers of such a petition is committed to the county superinten-

dent, and his or her action upon the petition is final.

Appeal from the district court for Scotts Bluff county: John B. Raper, Judge. *Affirmed.*

*Morrow & Morrow, for appellants.*

*Mothersead & York, contra.*

Heard before Morrissey, C.J., Letton, Rose, Dean, Aldrich, Day and Flansburg, JJ.

Letton, J.

This is an action in the nature of *quo warranto* brought by the appellants, who are residents and taxpayers respectively in school districts numbered 3, 10, and 39 of Scotts Bluff county. They pray for an order ousting the defendants from exercising any jurisdiction as a board of education over the territory embraced in the respective districts named. From an adverse judgment, relators appeal.

The real purpose and object of the suit is to challenge the validity of the organization of "The Consolidated School District of Scotts Bluff."

Chapter 243, Laws 1919, so far as material here, provides, in substance, that all the territory in any county of the state shall be districted into districts for high school and consolidated school purposes; that within 20 days after the act becomes a law the county board in each county shall appoint two school electors of the county, who, with the county superintendent, shall constitute a committee to make such surveys and investigations as will determine an equitable adjustment of the boundaries of districts for high and consolidated schools within the county; that within 10 days after the adjournment of a state conference of such committees provided for by the act, each county committee shall meet in the office of the county superintendent and proceed to plat and establish the schoolhouse site and boundary line of the proposed districts within the county. Within 10 days after the report is completed and maps of the new district pre-

pared, the county superintendent shall designate a time
for a hearing at the county seat, where any school elector
may file objections to the plan as recommended. After
the hearing the committee are given power to make such
changes in the report and maps as they deem advisable,
and within 30 days after the completion of the survey
they are required to transmit the final report and order to
the county board, who shall record the same in the min-
utes of their proceedings.

After the filing of the report with the county board 25
per cent. of the school electors may within 40 days file a
written protest with the state superintendent, who, after
a hearing is had, provided for in the act, shall then ap-
prove the boundaries established by the county committee,
or order a rearrangement of such boundaries as in his
judgment may seem best. In section 6 is found the fol-
lowing proviso: "Provided, that if the proposed new
district contains an organized consolidated or high school
district, when a petition of not less than 51 per cent. of
the school electors in said new district residing outside
of the existing organized consolidated or high school dis-
tricts shall be filed with the county superintendent, then
he shall declare such territory to be so annexed, condi-
tioned upon the approval of the board of education of
said existing districts. Blank petitions for this purpose
shall be furnished by the state superintendent: Pro-
vided, further, any parts or fragments of old districts
which may be left outside of the boundaries of the new
districts, in the adjustment and operation of this act,
shall be provided for by the districting committee, which
may add temporarily such parts or fragments to other dis-
tricts." It is under this proviso that the consolidated
district whose organization is challenged was created.

The gist of the petition is the allegation that no action
was taken by the county superintendent until after the
remonstrance and withdrawal of names had been filed,
and the further allegation that the withdrawals were
effective to reduce the number of lawful signers to less

than the jurisdictional number. The latter allegation is sustained by the evidence. The defense is that, prior to the time of filing the remonstrance and attempted withdrawals, the county superintendent had acted and declared the territory annexed to the school district of Scotts Bluff, conditioned upon the approval of the board of education of said district, and that the withdrawals came too late and were ineffectual.

The errors assigned are, in substance, that the court erred in holding that approval of the school boards of the territories sought to be annexed to the school district of the city of Scotts Bluff was not necessary before consolidation could be effected, and in holding that the petition could be legally acted upon without first giving notice to all districts affected of the presentation of the petition. The other assignments virtually are that the court erred in finding that the county superintendent verbally declared the annexation of the outlying territory of the Scotts Bluff district on the 29th day of June, 1920, and in holding that such verbal declaration was sufficient to prevent the withdrawal of names from the petition. It is also assigned that the court erred in holding that the petitioners could not remove their names from the petition after the same had been acted upon by the county superintendent and before the board of education of the city of Scotts Bluff approved the same.

The statute does not require approval by the school boards of the territory sought to be annexed to a high school districts, nor does it require notice of the presentation of such a petition to the county superintendent to be given to all districts affected. The statutory provisions with regard to the time the initial action to be taken by the committee on redistricting, and the recording of their proceedings in the minutes of the county board, whose proceedings are required by law to be published, were evidently designed to furnish sufficient notice of the action of the committee to all persons residing within the territory affected. The approval by the board of any district

except that of the consolidated or high school district to which it is desired to annex outside of the territory is not essential. The words, "the approval of the board of education of said existing districts," clearly refer to "the existing organized consolidated or high school districts" mentioned in the proviso.

The main question in the case is whether the evidence shows that the county superintendent had acted upon the petitions and declared the territory to be annexed before the withdrawals were filed. The evidence for relators shows that on June 5 some of those objecting to the consolidation made an inspection of the records in the office of the county superintendent but found no written record of any action having been taken on the petition. The county superintendent at that time was out of the city. On July 7, and on the morning of July 8, certain protests and remonstrances against the annexation of the territory in districts 3, 6, 10, and 39, and withdrawals of the names of 36 persons who had signed the original petition, were filed in the office of the county superintendent. The protests were signed by 86 others not signers to the petition.

On the 8th day of July a record of the approval of the board of education of the school district of the city of Scotts Bluff was filed in the office of the county superintendent. On August 5 the county superintendent in writing reported to the county clerk and the president of the board of education of Scotts Bluff that she had declared all the territory described in the petition to be annexed, and the consolidated school district created; the notification being in part as follows: "I hereby certify that on June 26th, 1920, petitions were filed in my office from 51 per cent. of the electors of the territory proposed by the redistricting committee for annexation to the school district of Scotts Bluff praying that said territory be annexed to the school district of Scotts Bluff.

"And I further certify that at the same time A. C. Davis and S. P. Lacy requested that the west half of

section 1 and the northwest quarter of section 12, township 23 north, range 55 west, be also permitted to come into the Scotts Bluff consolidated district.

"And I further certify that on June 29 I declared my verbal approval of the boundaries as made by the county redistricting committee, and petitioned for annexation to the Scotts Bluff school district, to include, however, said parts of sections 1 and 12 if they might be accepted by the Scotts Bluff school board and petitioned in by the interested parties by July 7."

Before the petition for annexation was filed with the county superintendent, S. P. Lacy and A. C. Davis had been removed from school district No. 10 and annexed to consolidated district No. 67. They preferred to be included in the Scotts Bluff district. The county superintendent prepared petitions for them to circulate to effect this purpose. These petitions were returned to the county superintendent on June 28. Lacy and Davis testified that the county superintendent then said she had made a mistake, and it would be necessary to post notices in the districts affected by their petitions, and told them to post the notices and return the petitions before July 6, and she would act on their petitions and the petition for the annexation of the other territory to the Scotts Bluff district at the same time, on her return from Denver. The county superintendent testified that she took final action on the petition on June 29. She further testified that after she approved the petition she informed certain members of the Scotts Bluff board of education of the approval, and also called by telephone certain electors in the annexed territory, and also the county clerk, or his deputy, and a member of the redistricting committee, and notified them of the action taken, and that this was done before she went to Denver, which was on June 30. She denies that Lacy and Davis returned petitions at a time when they had failed to put up the proper notice, but says they took the notices out on Saturday the 26th. She testifies she told Davis and Lacy that they must get the

assent of the Scotts Bluff board before they went any further. Two members of the board of education of Scotts Bluff testified that in the latter part of June the county superintendent told them she had approved the boundaries as laid out by the redistricting committee.

The superintendent of schools of the city of Scotts Bluff testified that, on June 29, "I went to her office and learned that she was going to Denver, and I wanted to know if her action was final—the action she had taken on the 26th. I wanted to know so that we might go ahead. She told me that her action was final in the matter, and that we were authorized to go ahead." He further testified that between June 29 and July 8 he received the written acceptance that she had declared; it came into his possession several days before the board of education acted upon it, and the board on the strength of this declaration has expended about $10,000 in furnishing extra school accommodations. The president of the Scotts Bluff school board testified that the county superintendent called him from Denver on July 7, and stated she had learned that a remonstrance had been filed against the redistricting, and assured him that the petition had been approved and the matter was settled.

On rebuttal there was testimony to the effect that after the superintendent returned from Denver the relators called at her office to ascertain what had been done with the remonstrance. Some of them testified that they asked her why she did not give them a hearing on the remonstrance, and she told them she had already acted on the other petition; that she had acted verbally, and told the different members of the Scotts Bluff school board that she would accept it, but was holding the petition on account of the Davis and Lacy petitions. When asked why the blanks were not filed (apparently referring to some printed blank forms of approval in evidence), she said she was holding them on account of the Lacy and Davis petition, so she could act on all of them together. It was also shown that some of the relators had protested against

State, ex rel. Tanner, v. Warrick.

the consolidation at the hearing before the redistricting committee, and that the petition had not been presented to them for signature; but it is also shown that some of them knew of it being circulated, while others only heard of it a short time before the remonstrance was filed.

The most important question in the case is whether the failure of the county superintendent to place upon record at the time it was made her approval of the petition left the matter still open so that petitioners might withdraw in the interval between her oral declaration and the making of the record. We have found no case exactly in point, the decisions cited by relators are to the effect that, unless a complaint in writing was filed before a board of equalization, it had no jurisdiction to raise or lower assessments in the particular circumstances of each case; but this we think does not aid us in this case. A judgment of a court is valid and effective when it is declared and announced by the judge, although it may not be reduced to writing until afterwards. Mandamus will lie to compel the entry of a judgment already rendered, but which has not been made a matter of record; and parol evidence is not admissible in other cases to show that a judgment has been rendered. Where there is no statute requiring proceedings to be made a matter of record, such as in the case of a nonjudicial board or office, and of merely ministerial acts in an inferior court, the strict rule as to court records does not apply, and they may be proved by parol. *Van Kleek v. Eggleston,* 7 Mich. 511; *Dehority v. Wright,* 101 Ind. 382; *Jolley v. Foltz,* 34 Cal. 321; *Richardson v. Hitchcock,* 28 Vt. 757; *Farnsworth Co. v. Rand,* 65 Me. 19; 22 C. J. 1011, sec. 1294.

But, even if we apply the law relating to courts of record, it would seem that, where the officer to whose judgment is committed the approval or rejection of a petition to form a consolidated school district has considered the question involved and has announced to a number of the parties mainly interested her decision upon the matter; the mere fact that a record of her action was not

made immediately, but was reduced to writing after-
wards, does not prevent the act and declaration from be-
coming effective and binding. There is no evidence to
show that any other declaration was ever made than that
announced by the county superintendent to several mem-
bers of the board of education of the city of Scotts Bluff
on June 29, and afterwards embodied in two statements,
one directed to the president of the board of education,
and the other to the county clerk. These statements
recite and declare the facts as found by the district court
to exist.

It was held in *Biart v. Myers,* 3 Neb. (Unof.) 196, that,
while a superintendent of public instruction acts judicial-
ly in forming a new school district from territory em-
braced within the boundaries of other districts, it does
not follow that his findings and orders in the premises
must be entered with all the formality of a judgment of
a court of law; if the record shows a substantial compli-
ance with the statute it is sufficient. There is no time or
place fixed by the statute for the declaration of approval
by the county superintendent; it is enough that the ap-
proval be made, and it should, of course, be shown in
writing within a reasonable time after the declaration is
made; but the essential thing is the approval, which is a
mental act, and the declaration, either oral or written,
which is physical. The mental determination would be
insufficient if unaccompanied by any act evidencing that
it had been made; but, when made and declared, it be-
comes effective, notwithstanding the fact that the written
evidence was not recorded until later. While the statute
in terms does not require the recording of the act, the
proper conduct of official affairs requires that such a
record be made.

The argument is made that, since the last withdrawal
from the petition was filed on the morning of July 8, and
the board of education of the school district of Scotts
Bluff did not meet to approve the boundaries, as defined
in the petition, until the afternoon of that day, final

action had not been taken, and therefore the right of withdrawal still existed. But this loses sight of the fact that the board of education has nothing whatever to do with the determination of the validity of the petition, or the number of qualified signers upon the same. The function of examination of the petition, and decision as to whether it should be allowed and approved, rests entirely with the county superintendent. The board of education has no power to act until after the approval of the petition has been certified to it by the county superintendent, and, hence, the action of the county superintendent with respect to the approval of the petition is the determining and final act so far as the petitioners are concerned. When a petition approved by the county superintendent has been presented to the board of education, the only act necessary to be done to effectuate a consolidation is the approval by the board. If this approval is withheld, the whole proceedings under this proviso are of no avail.

In *State v. Cox,* 105 Neb. 75, it is said, speaking of the act under consideration: "The bill does not purport to be an amendment of the former sections, but enacts entire new legislation upon the same subject-matter, and repeals the former sections covering that matter." This is a sufficient answer to the contention that the requirements of the former general statute governing the division of school districts must be complied with in proceedings under the new act.

It is conceded that petitioners might withdraw at any time before action was taken by the county superintendent. The evidence sustains the district court finding that no withdrawals had taken place before action by the county superintendent.

We find no error in the judgment. It is therefore

AFFIRMED.

ROSE, J., dissents.