STATE OF NEBRASKA EX REL. ETHEL LARSON ET AL.,
APPELLANTS, V. JOSEPHINE MORRISON ET AL.,
APPELLEES.

51 N. W. 2d 626

Filed February 8, 1952.   No. 33085.

*Roy E. Blixt,* for appellants.

*Edward E. Carr* and *Allen F. Black,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is an action in the nature of quo warranto to test the validity of a school district and oust respondents from office as members of the board thereof. After hearing upon the merits, the trial court rendered a judgment finding and adjudging the issues generally in favor of respondents and dismissing relators' action. Motion for new trial was overruled, and relators ap-

pealed, assigning substantially that the judgment was contrary to the evidence and law. We sustain the assignments.

The facts are not in dispute. They were either stipulated or undenied, and pleaded generally in relators' petition, which, contrary to respondents' contentions, stated a cause of action in quo warranto.

The record discloses that relators are residents, taxpayers, legal voters, and members of the school board of district No. 248, which was duly organized and lawfully performing the functions of a school district in Custer County.

Prior to filing the action here involved, and upon the filing thereof as well, relators complied in every respect with section 25-21,122, R. R. S. 1943, but the Attorney General and county attorney neglected and refused to file the proceedings.

The pertinent facts upon which relators claim the right to judgment are as follows: A duly qualified voter of district No. 248 circulated a petition among the legal voters thereof, requesting the county superintendent to divide the district into two separate districts, as provided in section 79-402, R. R. S. 1943. Such petition was signed by 17 persons residing in the district. Among such signers three were not legal voters and ineligible to sign the petition, which left but 14 lawful signatures thereon. The petition was filed in the office of the county superintendent on July 24, 1950, and on August 1, 1950, a sworn list of voters was also filed therein, purportedly to comply with section 79-404, R. R. S. 1943. Such list contained the names of 28 persons, but the 3 ineligibles aforesaid were also listed thereon, which left but 25 legal voters in the district.

On July 26, 1950, a written application signed by 18 legal voters, 7 of whom had signed the original petition, was filed in the office of the county superintendent, requesting that no action should be taken to create a new

district or divide the old until after the 1950-1951 school year.

Thereafter, on August 17, 1950, two legal voters filed a request in the office of the county superintendent to withdraw their signatures from the original petition, and thereby signified reasons for their intention to be considered as non-signers, which would have left but 12 signatures thereon, concededly less than 55 percent of the legal voters required by section 79-402, R. R. S. 1943, before the county superintendent had any jurisdiction, power, or authority to act.

In that connection, it will be noted that the county superintendent took no action whatever on the petition, did not even plan to act, and had made no decision whatever upon the petition until after she had consulted with the county attorney on August 28, 1950, after the aforesaid withdrawal of signatures. Nevertheless, on August 29, 1950, by written order directed to the county treasurer, and without any hearing, the county superintendent divided district No. 248, and reestablished district No. 157, formerly a part thereof, allegedly in conformity with section 79-402, R. R. S. 1943.

Pursuant to such order and notice, as provided by sections 79-410 to 79-413, R. R. S. 1943, inclusive, a meeting of purported school district No. 157 was held on September 11, 1950, whereat respondents were selected by persons attending the meeting to act as members of the school board for such district. This action was subsequently filed.

Whether or not, as argued by relators, the county superintendent was required to fix a time for hearing upon the petition and give relators and other interested parties an opportunity to be heard thereat before any action was taken, we are not required to decide, in view of other decisive reasons for disposition of the case upon the merits. It is sufficient for us to call attention to section 79-402, R. S. Supp., 1951, which now requires such to be done.

As we view it, there are but two questions presented: (1) Is quo warranto the proper remedy, and if so, who should have been made respondent parties; and (2) may a petitioner for the purposes provided in section 79-402, R. R. S. 1943, withdraw his signature after the petition is filed, but before it has been affirmatively acted upon by the county superintendent?

With regard to the first, section 25-21,121, R. R. S. 1943, provides: "An information may be filed against any person unlawfully holding or exercising any public office or franchise within this state, or any office in any corporation created by the laws of this state, or when any public officer has done or suffered any act which works a forfeiture of his office, or when any persons act as a corporation within this state without being authorized by law, or if, being incorporated, they do or omit acts which amount to a surrender or forfeiture of their rights and privileges as a corporation, or when they exercise powers not conferred by law."

Section 25-21,122, R. R. S. 1943, with which relators concededly complied, provides: "Such information may be filed by the Attorney General or by the county attorney of the proper county whenever either of such officers deems it his duty so to do, except that the county attorney shall not have authority to file such information against any state officer or a judge of the district court; Provided, however, that any elector of the proper county may file such information against any person unlawfully holding or exercising the functions of any public office in the state, other than state officers or judges of the district court, whenever the county attorney of the proper county shall refuse so to do within ten days after he shall have been notified in writing by any elector that any such person is disqualified by the Constitution or the laws of the State of Nebraska to hold the office in question or to exercise the functions thereof. Any person other than the county attorney who shall institute such action shall file with such information

in the office of the clerk of the district court a bond signed by a duly authorized surety company or by two resident freeholders of the county in which the action is filed, the amount of which bond shall be not less than five hundred dollars and be fixed by, and the sufficiency of the sureties thereon approved by the clerk. The bond shall be conditioned that the plaintiff shall prosecute the action without delay and that he shall pay the costs of such suit including a reasonable attorney fee to the person against whom such information is filed should the action be unsuccessful. The amount of such attorney fee shall be fixed by the court and taxed as costs in the action."

With regard to parties, this court has held: "Quo warranto, or a proceeding in the nature thereof, lies only against one who is in possession and user of the office, or who has been admitted thereto." State ex rel. Good v. Marsh, 125 Neb. 125, 249 N. W. 295.

As said in State ex rel. Caldwell v. Lincoln Street Ry. Co., 80 Neb. 333, 114 N. W. 422, 14 L. R. A. N. S. 336: "But where, as here, it is claimed that it has no existence as a corporate body because not organized in accordance with our statute, the case must proceed against the individuals who are usurping corporate rights."

Likewise, in State ex rel. Summers v. Uridil, 37 Neb. 371, 55 N. W. 1072, it is said: "Under very similar statutes it has been held in several states, and we think rightly, that in such proceedings against the persons unlawfully exercising the powers of an office the legal existence of that office may be determined. (People v. Carpenter, 24 N. Y., 86; State v. Parker, 25 Minn., 215; State v. Gladwin, 41 Mich., 647; State v. Coffee, 59 Mo., 59.) Indeed it would seem that to institute proceedings against the village itself would be to recognize its existence as a corporation, and that if the incorporation is void the only proceedings must be against the persons undertaking to exercise its franchises." It clearly appears, then, that neither district No. 157 nor

the county superintendent would have been proper or necessary respondent parties.

With regard to the remedy, this court held in State ex rel. Summers v. Uridil, *supra*: "Quo warranto is the proper remedy to oust persons who are exercising the powers of corporate offices when the corporation has no legal existence." As stated in Dappen v. Weber, 106 Neb. 812, 184 N. W. 952: " '* * * It is likewise a well-established doctrine in this country that quo warranto is the proper remedy to inquire whether a municipal corporation was legally created, as well as to oust persons exercising the privileges and powers of corporate officers when the municipal corporation has no legal existence. State v. Uridil, 37 Neb. 371; State v. Dimond, 44 Neb. 154; State v. Mote, 48 Neb. 683; High, Extraordinary Legal Remedies (3d ed.) sec. 684. An information in the nature of a quo warranto, * * * is the appropriate remedy.' * * * This rule is applicable to school districts, as, like municipal corporations, they obtain their franchises from the state and are created for public purposes and to carry out strictly public policies." As stated in School District D v. School District No. 80, 112 Neb. 867, 201 N. W. 964: "It would seem from Dappen v. Weber, 106 Neb. 812, that quo warranto is the proper action whereby to test the legal entity of a school district and the status of its officers." See, also, 47 Am. Jur., Schools, § 24, p. 314, citing Dappen v. Weber, *supra,* and other cases as authority for the statement. Quo warranto was also recognized as a proper remedy in State ex rel. Tanner v. Warrick, 106 Neb. 750, 184 N. W. 896.

It is true, as held in State ex rel. Donavan v. Palmer, 18 Neb. 644, 26 N. W. 469, a mandamus suit, that: "An order of the county superintendent as to the formation, division or change of school districts where he has jurisdiction cannot be attacked in a collateral proceeding." As stated in School District No. 67 v. School District No. 24, 55 Neb. 716, 76 N. W. 420: "An order of the county

superintendent as to the formation or change of boundaries of a school district cannot be collaterally assailed where he acted within his jurisdiction. (State v. Palmer, 18 Neb. 644.) It is conceded by counsel for plaintiff that this action must fail unless the proceedings before the county superintendent consolidating the two districts were not erroneous merely, but were without jurisdiction and absolutely void; but they argue against the validity of the order of consolidation, and their contention is unanswerable." The cause at bar is a direct attack upon the proceedings before an order of the county superintendent as void for want of any jurisdiction and authority to act because of insufficiency of the petition required by section. 79-402, R. R. S. 1943, and not because of any mere error or irregularity.

Respondents argued that relators had a remedy at law because they would have had a right to review such proceedings and order by petition in error, as held in Pollock v. School District No. 42, 54 Neb. 171, 74 N. W. 393. Be that as it may, under the circumstances presented here, where the county superintendent was without any jurisdiction and authority to act, relators were not required to pursue such remedy, and could prosecute an action in the nature of quo warranto.

Section 79-402, R. R. S. 1943, as applicable here, provides: "The county superintendent shall create a new district from other districts, or change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected."

As stated in Cowles v. School District No. 6, 23 Neb. 655, 37 N. W. 493, in speaking of comparable provisions: "These provisions are mandatory, and may, I think, be classed as jurisdictional. * * * The laws of this state, as well by policy as by letter, have left the control of the boundaries of school districts, primarily, with the legal voters of each district respectively. * * * After the first or original organization of a new county into one or more school districts, no new district can be formed, old one

altered, or the boundaries of any altered, without the movement therefor originating with the legal voters thereof, and their will to that effect being expressed by petition of the strength prescribed by statute. These are matters with which the school district, as a corporation, or quasi corporation, has been vested with neither power nor duty, nor has any district officer, board, or school meeting; but they rest with the voters in their capacity of petitioners, and with them alone."

In State ex rel. Donavan v. Palmer, *supra*, it is said: "The statute clothes the county superintendent with power, when certain conditions are complied with, to form new districts, and, when necessary, to make changes in those already existing. * * * He is invested with power, upon proper petitions being filed in his office, to create, divide, or change a school district or districts, and if he acts within the scope of his authority his orders are not subject to collateral attack." See, also, State ex rel. Shull v. Clary, 25 Neb. 403, 41 N. W. 256.

The final question then is whether or not the county superintendent here involved had any jurisdiction and authority to act. The answer depends entirely upon whether or not the persons who withdrew their signatures from the petition on August 17, 1950, had a right to do so before the county superintendent acted upon it August 29, 1950. We conclude that they did have such right, and that the county superintendent thus had no jurisdiction or authority to act upon the petition.

In that regard, this court said in Hoffman v. Nelson, 1 Neb. Unoff. 215, 95 N. W. 347: "We do not feel justified, in a purely statutory matter such as this, in placing any restriction upon the free action of a citizen which the law has not placed there and which no consideration of good morals or even propriety seems to require. We do not discover anything improper in a citizen, who thinks he is now better advised, changing his mind a second time as to the expediency of having such an election. * * * It seems to us better to say as defendants

in error do on page 18 of their able brief: 'He (the citizen) has absolute control of the matter as to whether or not his name shall remain upon the petition up to the moment that the board acts upon it.' "

In State ex rel. Tanner v. Warrick, *supra,* it is said: "The main question in the case is whether the evidence shows that the county superintendent had acted upon the petitions and declared the territory to be annexed before the withdrawals were filed. * * * It is conceded that petitioners might withdraw at any time before action was taken by the county superintendent." We concluded, however, from the evidence in that case, that there had been no withdrawals before the county superintendent acted upon the petition by declaring her approval thereof.

In Dappen v. Weber, *supra,* upon rehearing at 106 Neb. 817, 187 N. W. 230, citing State ex rel. Tanner v. Warrick, *supra,* as authority, the court concluded that petitioners might withdraw their names from the petition by written request at any time before action had been taken thereon by the county superintendent. See, also, State ex rel. Morgan v. Nemaha County, 10 Neb. 32, 4 N. W. 373. There are authorities seeming to hold a contrary view, but they are generally distinguishable by virtue of provisions of statute or controlling facts. The majority of cases comparable with that at bar adhere to the foregoing rule for the reason generally that the rule which permits a withdrawal of signatures at any time before final action upon the petition is more likely to result in real and mature judgment of the voters, and is calculated to discourage a hasty presentation of a petition for signature without a full disclosure of the real merits of the question. See, Annotation, 11 L. R. A. N. S. 372, where many cases are cited. See, also, the recent case of Paetzel v. Clift, —— Minn. ——, 48 N. W. 2d 731, which permitted the withdrawal, before any action had been taken thereon, of a school district resolution directed to the county board

requesting a dissolution of a school district and annexation to another. In the opinion it is said: "Without the initiating action of a school district vote, the county board in this case had no jurisdiction to enter its order, and the order is void."

Likewise, we conclude that without a petition signed by 55 percent of the legal voters, as required by section 79-402, R. R. S. 1943, the county superintendent had no jurisidiction or authority to enter the order creating district No. 157 or changing the boundaries of district No. 248, therefore the order was void.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed, and the cause is remanded with directions to enter judgment in conformity with this opinion and the prayer of relators' petition. All costs are taxed to respondents.

REVERSED AND REMANDED WITH DIRECTIONS.