STATE OF NEBRASKA, EX REL. T. J. RESSEL, v. S. A.
WHITNEY ET AL.

FILED JUNE 27, 1894.    No. 6915.

**Municipal Corporations:** INCORPORATION: ATTACK IN COL-
LATERAL PROCEEDING.  Where the existence of a municipal
corporation is not questioned by the state, it cannot be put in
issue by a private individual in a collateral proceeding.

ORIGINAL application for *mandamus.*

*W. S. Morlan* and *Gomer Thomas,* for relator.

*R. L. Keester, J. G. Thompson,* and *John Everson, contra.*

POST, J.

This is an original application for a writ of *mandamus.*
The relator in his petition alleges that he is a resident of
the city of Alma, which is a city of the second class; that
at the regular election held in said city on the first Tuesday
of April, 1894, he was a candidate for the office of coun-
cilman for the third ward thereof, and that according to the
votes as certified and returned to the city clerk he received
a majority of all the votes cast for said office, but that the
respondents, of whom J. Zerbe is the acting mayor, Charles
Sadler the acting clerk, and the others who are acting coun-
cilmen, refused, and still refuse, to canvass said vote and
declare the result thereof.  The respondents Hunt, Laf-
ferty, and Traver join in an answer, in which they admit the
material allegations of the petition, and allege their will-
ingness to canvass the vote, but that the other councilmen
oppose such action, and the mayor, who has the deciding
vote, supports the last named members in their refusal.
That allegation is verified by the record of the council duly
certified.  They allege further that during the year last

prior to April 3, 1894, three councilmen and the mayor favored the licensing of saloons, while three councilmen opposed license. Accordingly licenses were allowed, but which terminated by operation of law on the 1st day of May, 1894. At the election named the officers of the preceding year were all re-elected, except that Daniel Sullivan, one of the councilmen who favored license, was defeated by the relator, so that a majority of the council elect are opposed to the licensing of saloons, but that the mayor and the other councilmen have conspired to keep the relator out of office until they shall have allowed licenses for the year commencing May 1, 1894. A separate answer was filed in behalf of the city, the mayor, and Sullivan, Turkington, and Whitney, councilmen, in which they deny that they were ever requested by relator to canvass the vote as charged, and allege that according to a census of the city taken in the month of January, 1894, there were less than 1,000 inhabitants therein, and that said city did not at the time of the election in question, and does not now, contain 1,000 inhabitants, thus in effect denying the corporate existence of the municipality named as a city of the second class. Upon the completion of the issues the cause was sent to a referee for trial, who subsequently submitted the following findings:

"1. That Alma, Harlan county, Nebraska, is now, and has been for more than five years last past, exercising all the rights, powers, and privileges of a city of the second class, under the act providing for the organization and government of cities having a population of one thousand and not more than ten thousand.

"2. That in pursuance of the election for said city held on the 3d of April, 1894, the relator, T. J. Ressel, received as candidate for councilman from the third ward of said city a majority of all the votes cast for councilman in said ward.

"3. That all the other candidates named in the petition

·as having been elected on the 3d day of April, 1894, each received a majority of the votes cast for the respective officers in question.

"4. That the presiding mayor, city clerk, city treasurer, and one member of the present council were re-elected at said election, and are now holding their respective offices and exercising the rights, powers, and privileges of the same.

"5. That the relator at the time of said election was, and now is, a resident elector and taxpayer of the said third ward of said city.

"6. That at the first regular meeting of the city council after the said election the said council refused to canvass the votes of said election and issue certificates of election to the parties entitled thereto, as requested by relator, and that said council at its succeeding regular meeting refused to canvass said votes and issue said certificates as requested by relator, and still refuse to canvass the vote and issue the certificates as aforesaid.

"7. That the poll books and returns of said election were in the custody of the city clerk at each of the meetings of the city council last named, and of easy and convenient access to said council.

"8. That on the 10th day of January, 1894, said city council made an order instructing the city clerk to proceed to take the census of said city, and in pursuance of said order the said clerk, on the 14th day of March, 1894, made his return in the premises to the council then in session, which return showed the population of Alma to be less than one thousand, but more than nine hundred, which report was adopted by said city council.

"9. That after the adoption of this census report of the clerk, to-wit, on the 14th day of March, 1894, the said city council proceeded, as provided by law in cities of this class, to call and hold an election for mayor, three members of the city council from the three separate wards, a city

clerk, and city treasurer. That said election appears to have been regular in all things, conforming to the laws touching the elections for cities of the second class having one thousand population and not more than ten thousand.

"10. That there are no existing records of the organization of the city of Alma, but there was parol evidence tending to show such organization, and that the same was made of record, and that said record has since been lost.

"Respectfully submitted,    Wm. R. Burton,
"*Referee.*"

The reliance of the respondents is apparently upon the proposition that on the completion of the census mentioned the said corporation ceased to be a city of the second class, and became *eo instanti* a village, and that there exists no authority for the division of villages into wards, and that the election of councilmen by wards is without authority and void. To that proposition we cannot give assent. The rule is well settled upon authority that the existence of a municipal corporation cannot be questioned in collateral proceeding. In Dillon, Municipal Corporations [4th ed.], sec. 43a, it is said: "Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties; and the rule is not different although the constitution may prescribe the manner of incorporation." The conduct of the respondents appears to have been contumacious in the extreme and is inexcusable in any view of the case. The writ is allowed as prayed, and the costs, including $60 to the referee, will be taxed to the respondents Zerbe, Whitney, Sullivan, and Turkington.

Writ allowed.