## Illinois Industrial Home For The Blind, Plaintiff in Error, v. Edward S. Dreyer et al., Defendants in Error.

### Gen. No. 14,327.

1. BONDS—*when sureties liable for acts of hold-over.* If a treasurer is elected for a period of two years and until his successor is elected and his bond correctly recites the terms of his election, if he holds over after such period of two years and no successor is elected and during such hold-over period makes default, the sureties are liable.

2. BONDS—*statute concerning suits upon, of public officers, construed.* A treasurer of an institution whose trustees are appointed by the governor by and with the advice and consent of the senate and whose property is held in trust for the state, is a public officer within the meaning of section 13 of chapter 103.

Action of debt. Error to the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1908. Reversed with finding of facts and judgment here. Opinion filed October 25, 1909.

**Statement by the Court.** Plaintiff in error brought an action of debt in the Circuit Court against defendants in error and George A. Weiss and George Schneider, as obligors on the official bond of defendant Dreyer as treasurer of plaintiff, to recover $3103.66 damages for the breach of the condition of said bond. May 10, 1907, plaintiff dismissed as to the defendants Weiss and Schneider, the cause was submitted to the court on the issues joined between plaintiff and the other defendants, and plaintiff had judgment against defendant Dreyer for $200,000, the penalty of the bond as debt and $3,103.36 damages, but the court gave

judgment against the plaintiff in favor of the defendants Dickman, Demling and Berger. Berger pleaded his discharge in bankruptcy and the propriety of the judgment in his favor is not questioned. The bill of exceptions states that the parties agreed as to the facts established by the evidence, and sets out the facts so agreed on.

Plaintiff was created by special law passed June 13, 1887. Hurd's Stat. 1908, p. 258. Its charter provides for a board of trustees to be appointed by the governor, with the consent of the Senate, and that said board shall have power to elect a president, secretary and treasurer, and shall "fix the terms of service of said officers of said board." The board of trustees did not, by by-law or other regulation, fix the term of office of the treasurer. August 12, 1893, defendant Dreyer was elected by the board of trustees treasurer of said corporation, "for the period of two years and until his successor should be elected." On the same day the bond sued on was executed, delivered and approved. It is in common form. The condition recites the election of Dreyer as treasurer of said corporation August 12, 1893, "for the period of two years and until his successor is elected." Dreyer entered on his duties as treasurer, and there was no election of a successor until June 4, 1897, when Fred M. Blount was elected treasurer. Dreyer, from the time of his election up to the election of Blount as his successor, "filled and occupied" the office of treasurer. He failed to account for or turn over to Blount $3,103.36 of the amount received by him as treasurer.

BOWERSOCK·& STILWELL and JACOB H. HOPKINS, for plaintiff in error.

MAYER, MEYER & AUSTRIAN, for defendants in error.

MR. JUSTICE BAKER delivered the opinion of the court.

The condition of the bond is that Dreyer shall truly

account for all moneys, etc., coming to his hands as treasurer ''during his term of office, and at the expiration of his term of office shall pay over to his successor in office,'' etc., all such moneys, etc. By the terms of this condition, the obligation is unlimited in time and undertakes for the faithful conduct of Dreyer as treasurer during his term of office, and that at the expiration of his term he shall pay over the funds in · his hands to his successor in office. The power to fix the term of the treasurer was by the charter vested in the board of trustees. The board elected Dreyer treasurer ''for the period of two years and until his successor should be elected,'' and the bond correctly recites the terms of his election. For the duration of Dreyer's term of office we must look alone to the terms of his election, for there is no general statute, charter, by-law or regulation limiting or affecting the term of his office.

In the leading case of Lord Arlington v. Merricke, 2 Saunders, 404, a certain person was appointed ''deputy post master of the stage at Oxon'' for the term of six months. The condition of the bond was that if the said deputy should ''for and during all the time'' that he should continue deputy, etc., then, etc., the obligation should be void, and it was held that it was the fair understanding that the surety intended to be bound only for six months, the ground of the judgment being the manifest intent to that purpose of the contracting parties.

The appointment in that case was for a determinate period, with no provision that the person appointed should under any circumstances continue in office after the expiration of that period. In this case, by the terms of Dreyer's election, he was to continue treasurer, not alone for two years, but for two years ''and until his successor should be elected.'' Under the terms of the appointment of the deputy in that case a new appointment was necessary to continue the deputy in office after the expiration of six months.

Under the terms of Dreyer's election no new election was necessary to continue him in office after the expiration of two years, but he was, by the very terms of his election, to continue in office after the expiration of two years until his successor should be elected. In Chelmsford Co. v. Demarest, 7 Gray, 1, the statute, after directing that the clerk and treasurer should be chosen annually, added that they should hold their offices until others should be chosen and qualified in their stead. It was held, that a surety on a bond of an officer so chosen was not liable for the act of the officer committed after the next annual election, although no successor was then elected. The ground of the decision was that when the office is annual, the parties to the bond are presumed by law to bind themselves accordingly if there are no words inserted in the bond clearly extending it to a future election. Other cases cited by counsel for defendants in error announce the same rule in cases where the statute provided for the annual or biennial election of an officer, with the provision that he should hold his office until his successor should be elected.

In Amherst Bank v. Root, 2 Met. 522, the law gave the directors of the bank power to appoint a cashier, who should hold his office until his successor should be elected. Root was elected cashier October 3, 1831, "for the year ensuing," and re-elected each year thereafter until 1838. The breaches occurred from 1836 to 1838. It was held that the office was not an annual office, and that the sureties on the bond given in 1831 were liable.

We do not think that in the absence of any provision of statute, charter, by-law, or regulation, making the office of treasurer biennial, Dreyer's term expired at the end of two years from his election, or that it then became the duty of the board of trustees to elect his successor, or that the sureties on his bond, given on his election, had any ground to suppose that the board would, at the end of two years, elect a succes-

578 APPELLATE COURTS OF ILLINOIS.

Ill. Industrial Home For The Blind v. Dreyer, 150 Ill. App. 574.

sor; but think that under the terms of Dreyer's election his office of treasurer was a continuing office until another treasurer was elected and, therefore, that the sureties on his bond are liable for the breach proven, although that breach occurred nearly four years after his election.

Plaintiff dismissed as to defendants Weiss and Schneider, and the case therefore stands as if they had never been sued. No rule is better settled than that at common law a suit on a joint and several bond can be maintained only against one or all of the obligors who are living, but not against an intermediate number, except when one of the obligors makes a defense personal to himself, such as a discharge in bankruptcy. This rule has been changed in this State in the case of actions on bonds of public officers by a statute, section 13, chapter 103, R. S., which provides: "Whenever the condition of the bond of any public officer shall be violated, suit may be instituted on such bond, and prosecuted to final judgment against such officer, and any or all of the sureties, or against one or more of them, jointly and severally, without first establishing the liability of the principal by obtaining judgment against him alone." Is the office of treasurer of the plaintiff a public office; is its incumbent a "public officer" within the meaning of the term as used in the statute?

The statute is remedial and its provisions are to be liberally construed in advancement of the remedy. The charter of the plaintiff corporation provides (section 1) that the property of the corporation "shall be held in trust as the property of the state;" section 3, "that the trustees shall be appointed by the governor with the advice and consent of the senate;" section 4, that the traveling expenses of the trustees shall be paid by the state; section 11, that the auditor of public accounts shall, on the order of the board of trustees, draw warrants on the state treasurer for all sums which shall be appropriated for the use of said in-

stitution by the General Assembly, and section 12 appropriates $100,000 for the purchase of lands, erection of buildings for said institution and for defraying the expenses of conducting the same.

The office of treasurer of the plaintiff is clearly an office, not an employment. The property of the plaintiff is held in trust as the property of the state. The treasurer is elected in the manner prescribed by law, with a title given to him by law, and exercises functions concerning the public assigned to him by law.

We think that Dreyer was a public officer within the meaning of the term as used in the statute, and therefore that this action can be maintained against him and his co-defendants Dickmann and Demling.

The judgment of the Circuit Court will be reversed and judgment entered here in favor of the plaintiff in the Circuit Court, plaintiff in error here, and against Edward S. Dreyer, Emil Dickmann and Joseph Demling, defendants in the Circuit Court and defendants in error here, for the sum of $200,000 debt and $3,133.36 and costs of this court and of the Circuit Court, said judgment for debt to be discharged on the payment of the judgment for damages and costs.

*Judgment reversed and judgment here against certain of the defendants in the Circuit Court, with finding of facts.*