Dappen v. Weber.

HENRY DAPPEN ET AL., APPELLANTS, V. DAN H. WEBER ET AL., APPELLEES.

FILED OCTOBER 14, 1921. No. 21785.

1. **Schools and School Districts: DE FACTO HIGH SCHOOL DISTRICT.** Where a petition is filed with the county superintendent of schools under the proviso of section 6, ch. 243, Laws 1919, containing the names of persons whom he holds to be not less than 51 per cent. of the school electors residing outside of an existing organized high school district and adjoining said high school district, asking that said territory be consolidated with said high school district, and he issues his order thereon declaring such territory to be annexed to and consolidated with said high school district and numbers the new or consolidated district, and he and the superintendent of public instruction recognize said consolidated district to be a legal entity, *held*, that said consolidated district is a *de facto* school district.

2. ———: ———: QUO WARRANTO. Where a *de facto* school district is shown to exist, its legality cannot be attacked by injunction or by other collateral proceeding, but must be tested by *quo warranto*.

3. ———: OFFICERS: QUO WARRANTO. Where it appears that certain persons are acting as the board of education of a school district under color of right, and they are recognized as such by the county superintendent of schools and the superintendent of public instruction, *held*, that the right to their offices cannot be questioned by injunction, but must be tested by *quo warranto*.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Dort & Cain,* for appellants.

*John Wiltse, contra.*

Heard before MORRISSEY, C.J., LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ., ALLEN and REDICK, District Judges.

ALLEN, District Judge.

May 14, 1920, Henry Dappen, M. C. Riley, Joseph Kean, Alfred Ramsey, Mike J. Tiehen, Charlie Schutte, Ambrose Tiehen, Joseph Lanning, George Funk, John Lyons, and George Utermohlen, plaintiffs, for themselves and on behalf of "one hundred thirty other qualified resident school electors and duly assessed taxpayers," filed their petition in equity in the district court for Richardson county against Dan H. Weber, county superintendent of schools, and Joseph G. Heim, M. U. Riley, Gertrude Heim, L. L. Kinsey, H. W. Heim, and Daisy Smith, as the board of education of high school district No. 95 and acting as the board of education of consolidated district No. 15, to obtain a decree adjudging void the order of said Weber as county superintendent of schools of March 24, 1920, attaching the major part of districts Nos. 34, 35, 42, 43, 44, and 98 to and consolidating the same with Dawson high school district No. 95, and out of said adjoining territory and said Dawson high school district No. 95 creating consolidated district No. 15.

The substance and purpose of the petition are well stated in the following excerpt from the brief of counsel for appellants:   "Upon May 14, 1920, Henry Dappen, and ten other school electors and taxpayers, filed a petition in behalf of themselves and one hundred thirty other school electors and taxpayers in the district court of said county, attaching thereto the record of the proceedings before the county superintendent, and alleging that the petition filed with the county superintendent was insufficient and that the order of annexation is void; alleging that the act under which the annexation was pretended to be made was void and unconstitutional; that the statutes pertaining to annexation had not been complied with, and pray-

ing that the annexation be declared void, the territory be restored as it previously existed, and that the defendants be restrained as county superintendent and members of the school board from exercising any jurisdiction or powers under or because of said order of annexation." "The answer admits that no written notice was given of the organization of school district No. 15, and no election was held for the purpose of organizing said school district and for the annexation; that, by virtue of the order of the county superintendent, the annexed territory was annexed to school district No. 95 and was thereby made a part of consolidated school district No. 15; that petitioners' protest had no valid force or effect and the county superintendent had no authority to grant the request."

Counsel for the defendants admits that "This action is brought to test the legality of such annexation or consolidation and to set aside the order of the district court holding such consolidation lawful."

Consolidated district No. 15 was organized under that part of section 6, ch. 243, Laws 1919, which reads as follows: "The new district when organized shall be governed by all laws enacted for the government of schools; provided, that if the proposed new district contains an organized consolidated or high school district, when a petition of not less than fifty-one (51%) per cent. of the school electors in said new district residing outside of the existing organized consolidated or high school districts shall be filed with the county superintendent, then he shall declare such territory to be so annexed, conditioned upon the approval of the board of education of said existing districts."

As we have just seen, the avowed purpose of this action is to obtain a decree setting aside and holding void consolidated district No. 15, and to prevent the board of education of Dawson high school district No. 95 from exercising authority over the adjoining territory as a board of said consolidated district. It is not claimed that the defendants, Joseph G. Heim, M. U. Riley, Gertrude Heim,

L. L. Kinsey, H. W. Heim, and Daisy Smith, are not the legally qualified board of education of Dawson high school district No. 95, but it is urged that the organization of the consolidated district was defective (1) because, while the petition presented to the county superintendent for its establishment purported to contain over 51 per cent. of the names of the school electors in the adjoining territory, as a matter of fact it contained less than that number; and (2) because the order of the county superintendent was not approved by the board of education of the district from which the adjoining territory was taken. But the record shows that the county superintendent and the superintendent of public instruction recognized consolidated district No. 15 as a legal entity and the board of education of Dawson high school district No. 95 as its officers.

This being an appeal from the judgment of the district court in a suit in equity dismissing plaintiffs' action without day, it is to be tried *de novo* on the record there made, and we are required to "reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence, without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof." Rev. St. 1913, sec. 8198. It is our duty, under such circumstances, to affirm the judgment of the district court if, for any sufficient reason appearing in the record, it was correctly entered.

Consolidated district No. 15 was at least a *de facto* public quasi corporation or governmental subdivision of the state for educational purposes, and the defendants, Joseph G. Heim, M. U. Riley, Gertrude Heim, L. L. Kinsey, H. W. Heim, and Daisy Smith, were, respectively, *de facto* officers thereof acting in good faith and under color of authority. 22 R. C. L. 681, sec. 17; 24 R. C. L. 564, sec. 7.

In *Osborn v. Village of Oakland,* 49 Neb. 340, it is said: "It is patent that the object and purpose of this proceed-

ing is to test the corporate existence of Oakland as a city of the second class, and the question presented is whether injunction is the appropriate action. It is a general rule, supported by the decisions of this and other states, that equity will not grant a party relief by injunction, where he has a plain and adequate remedy at law. It is likewise a well-established doctrine in this country that *quo warranto* is the proper remedy to inquire whether a municipal corporation was legally created, as well as to oust persons exercising the privileges and powers of corporate officers when the municipal corporation has no legal existence. *State v. Uridil*, 37 Neb. 371; *State v. Dimond*, 44 Neb. 154; *State v. Mote*, 48 Neb. 683; High, Extraordinary Legal Remedies (3d ed.) sec. 684. An information in the nature of a *quo warranto*, and not a bill for injunction, is the appropriate remedy."

In 24 R. C. L. 565, sec. 8, it is said: "The acts of a *de facto* school district, one operating under color of right, are valid. If a school district has been formed under color of law, its legality can only be determined by a suit brought for that purpose in the name of the state, or by some one under the authority of the state, who has a special interest affected by the existence of such corporation, and the fact that the complainant is a taxpayer is not sufficient. It is generally stated that the legality of the formation of a school district can be determined only in a direct proceeding and cannot be questioned collaterally."

The following authorities are in point: *State v. Stein*, 13 Neb. 529; *State v. Mayor and City Council*, 28 Neb. 103; *Hotchkiss v. Keck*, 84 Neb. 545; *State v. Northup*, 79 Neb. 822; *State v. Whitney*, 41 Neb. 613; *State v. Several Parcels of Land*, 80 Neb. 11; *School District v. Wolf*, 78 Kan. 805, 20 L. R. A. n. s. 358; *State v. Olson*, 107 Minn. 136, 21 L. R. A. n. s. 685, and notes; *In re Sawyer*, 124 U. S. 200; *State v. Van Beek*, 87 Ia. 569; *Ward v. Sweeney*, 106 Wis. 44; *Demarest v. Wickham*, 63 N. Y. 320; *Newman v. United States*, 238 U. S. 537; *Reynolds*

*v. Moore,* 9 Wend. (N. Y.) 35; *Ex parte Keeling,* 54 Tex. Cr. Rep. 118; *Attorney General v. Utica Ins. Co.,* 2 Johns. Ch. (N. Y.) *371; *Hovelman v. Kansas City H. R. Co.,* 79 Mo. 632; McQuillin, Municipal Ordinances, sec. 349, and note; 1 Abbott, Municipal Corporations, sec. 32, and note; Cooley, Constitutional Limitations (7th ed.) 363, 364; 10 R. C. L. 343, sec. 93; 14 R. C. L. 374, sec. 76.

This rule is applicable to school districts, as, like municipal corporations, they obtain their franchises from the state and are created for public purposes and to carry out strictly public policies. This view of the case renders it unnecessary to discuss other points presented in the briefs.

The judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed February 16, 1922. *Former judgment of affirmance adhered to.*

1. **Schools** and **School Districts:** ANNEXATION OF TERRITORY: PETITION: SIGNATURES. Signatures to the petition for annexation in the instant case may be legally attached by an authorized agent of the petitioner.

2. ———: ———: ———: WITHDRAWAL OF NAMES. "Petitioners for the annexation of territory to an existing high school district, under section 6 of the act above mentioned, may withdraw their names from the petition by written request at any time before action has been taken by the county superintendent." *State v. Warrick, ante,* p. 750.

3. ———: ———: SUFFICIENCY OF PETITION. Petition, under section 6, ch. 243, Laws 1919, for the annexation of certain described territory to an existing school district thereby to form a new consolidated or high school district, examined, and *held* to be sufficient.

Heard before LETTON, ROSE, DEAN, ALDRICH, DAY and FLANSBURG, JJ.

ALDRICH, J.

The former opinion in this case was based upon the rule that the plaintiffs had pursued the wrong procedure,

and that the action should have been in *quo warranto.* The plaintiffs have moved for a rehearing, on the ground that that objection was not raised in the trial court, nor presented in the briefs, and that the court should not have so determined the case *sua sponte,* without allowing a hearing to the parties in litigation on the question. A rehearing was therefore granted. Since the objection to the question as to whether or not the injunction was the proper remedy was not raised in the trial court, nor in the briefs on appeal here, we believe the case should be determined on the merits and on the questions raised on the trial and upon the original briefs. *Taylor v. Independent School District,* 181 Ia. 544.

The legislative session of 1919, for the purpose of facilitating and disseminating opportunities for general education for the benefit of pupils living in country districts, passed a law beneficial for these purposes, and provided for redistricting the various counties into consolidated high school districts. The principal attack of appellants is centered upon section 6, ch. 243, Laws 1919, which section is in words and figures as follows:

"If the election results are favorable to the establishment of said new school district, the county superintendent within ten (10) days thereafter, shall call a meeting of the electors as provided by law for the organization of new districts; at said meeting the qualified electors shall proceed to elect a school board as provided by law. The new district when organized shall be governed by all laws enacted for the government of schools; provided that if the proposed new district contains an organized consolidated or high school district, when a petition of not less than fifty-one (51%) per cent. of the school electors in said new district residing outside of the existing organized consolidated or high school districts shall be filed with the county superintendent, then he shall declare such territory to be so annexed, conditioned upon the approval of the board of education of said existing districts. Blank petitions for this purpose shall be furnished by

the state superintendents.  Provided, further, any parts or fragments of old districts which may be left outside of the boundaries of the new districts, in the adjustment and operation of this act, shall be provided for by the districting committee, which may add temporarily. such parts or fragments to other districts."

A careful analysis of this section is the real basis of the organization and redistricting of the territory involved, and to do this it is necessary to follow the provisions of chapter 243, Laws 1919, and, if they have been complied with, then the district in question is entitled to a consolidated high school.

On March 23, 1920, a petition was filed with the county superintendent of public schools asking that certain territory mentioned and described in the petition be annexed to and consolidated with the Dawson High School District No. 95, thus forming a consolidated high school district No. 15, in this respect conforming to the demands of the statute.

On March 23, 1920, the school board of Dawson High School District No. 95 approved the petition of annexation, as appears of record herein.  Then followed, on the 24th of March, a proclamation of the county superintendent declaring that the territory to be so annexed had been formally declared.  In this respect section 6, *supra,* had been complied with.  No election was required for the reason that the procedure by petition met all requirements of an election.

Section 6703, Rev. St. 1913, is not inconsistent with chapter 243, Laws 1919, because the two statutes were enacted for entirely different purposes.

The petitions in question were addressed to the county superintendent as provided by law.  They indicated the purpose of the petitioners and described the territory which the petitioners sought to have consolidated with Dawson High School District.  These records were in the office of the county superintendent before he acted.  The Dawson high school board consented and the county

superintendent proclaimed the territory annexed, and that was all that was necessary.

The question which presents itself for consideration is whether the number of electors signing the petitions was sufficient in accordance with the requirements of the statute under consideration. In some instances it is clearly shown that certain signers were not entitled to be considered as electors under the statute.

The electors who signed the petition asking the school district to make the consolidation or annexation have no right to withdraw their names from the petition after it is presented and finally acted upon by the county superintendent. *Sim v. Rosholt,* 16 N. Dak. 77, 11 L. R. A. n. s. 372. As further elucidating the proposition in issue, see *Hudson v. Bayonne,* 54 N. J. Law, 293.

It is admitted by the parties that there were 167 electors in the district proposed to be annexed. It is the contention of the defendants that 153 only of those electors were qualified to sign the petition, since only that number had children of school age, or had property assessed in their names upon the assessment roll of the county. There were 102 signatures upon the petition, 11 of whom, it is conceded by both sides, were not qualified to sign, because of the fact that they had no school children, nor property assessed in their names. Two others had property, but their property was not assessed in their names. There were 7 of the signatures to the petition which were proved to be not genuine. One of the persons who signed the petition was not a resident of the district proposed to be annexed. Two petitioners, it is shown, withdrew their names before the petition was presented to the school superintendent. This made a total of 23 names which, it may be conceded without passing upon their validity, should be withdrawn from the petition. Still there are 79 signatures left, which would be, even according to defendants' contention, 51 per cent. of the qualified electors in the proposed district.

The defendants claim that there were 11 persons who

Dappen v. Weber.

signed under a misapprehension of the facts. Some thought an election was to be called; some thought they would have to pay tuition if they did not sign; and some were under other false impressions. However, it does not appear that any false representations of fact were made by the circulators of the petition, nor that there was any fraud perpetrated. There is no reason why these 11 signatures should not be counted.

There are four signatures, the names of Elizabeth White, Mrs. G. B. Steits, Mrs. Etta Nichols, and Cordelia Mullens, which were also not genuine signatures of the parties; that is, signatures they purported to be, but which were written on the petition by their husbands. It is claimed by the defendants that these signatures should not be counted. It appears that in the case of Mrs. White and Mrs. Steits their husbands signed in their presence after talking the matter over with them. In the case of Etta Nichols the matter was talked over by herself and husband, and she requested her husband to sign her name. In the case of Cordelia Mullens both husband and wife were sick in bed at the time the petition was brought to the house. They had talked together as to what position they would take in the matter, and, before signing, her husband spoke to her about signing the petition. He then went into the next room and there signed both her name and his own. She did not afterwards object to her signature having been placed upon the petition. We think the circumstances are sufficient to show that the signatures were duly authorized. What a party may do, when done, he may assent to so as to bind himself. We find this proposition in 2 C. J. 472; *Wilson v. Hayes,* 40 Minn. 531, 12 Am. St. Rep. 754, 4 L. R. A. 196; *Cram v. Sickel,* 51 Neb. 828.

All of this discussion up to date leads to the fair and impartial conclusion that the petition in question logically meets the requirements of the statute made and provided for cases like this. We are therefore led to the conclusion that this is a legal and valid statute performing a

great good to the school children of this state and has for its object and purpose the wise and beneficent result to give to school children of the country districts the advantages and opportunities of a high school education.

Many of the propositions discussed by counsel have been discussed and thoroughly gone into and the correct opinion arrived at in the case of *State v. Warrick, ante,* p. 750.

It is unnecessary for us to pursue the subject further. We hope we have made ourselves clear in discussing the provisions of the statute, and that the people of this district in question may have the benefit of a high school as provided for. We could not have done otherwise than affirm this case, for the provisions and requirements as found in chapter 243, Laws 1919, preclude us from having any other view.

It is our duty, plainly as a matter of law, to affirm this case.

AFFIRMED.