STATE, EX REL. CHARLES F. STROMAN ET AL., APPELLANTS, v. ARTHUR J. RICHARDSON ET AL., APPELLEES.

FILED MAY 17, 1922. No. 22423.

1. **Schools and School Districts:** CONSOLIDATED DISTRICTS. Under the act "to provide for the districting of all territory into districts for consolidated and high school purposes, and to provide for the organizing and operating of the same," a new public school district may be established by the vote of the school electors in the proposed new district, where the old territory included a village in a public school district with a board of three members, though high school branches were taught therein and high school grades were available to pupils. Laws 1919, ch. 243.

2. ——: ——: ELECTION: NOTICE. Notice of an election to establish a new consolidated school district under the act of 1919 could be given by the posting of notice in three places for 20 days, in territory where the consolidation could be effected by a majority vote of the school electors. Laws 1919, ch. 243.

APPEAL from the district court for York county: GEORGE F. CORCORAN and EDWARD E. GOOD, JUDGES. *Affirmed.*

*Hainer, Craft, Edgerton & Fraizer* and *H. L. Norval,* for appellants.

*Sandall & Wray, contra.*

Heard before ROSE, DEAN, DAY and FLANSBURG, JJ.

Rose, J.

This is an action in the nature of *quo warranto* to oust from office respondents Arthur J. Richardson, William Myers, William Lytle, Myron Osborn, Samuel Severn, and James Keefe, who, it is charged, are unlawfully exercising the powers of the board of education of consolidated school district No. 3 of York county. A further purpose of the action is the dissolution of the consolidated school district described, on the ground that it has no legal existence. One of the relators is Charles F. Stroman, county attorney of York county. Another is William J. Hoffmaster, a resident taxpayer, who sues for himself and all others similarly situated. In answering the information respondents pleaded their election and qualification as members of the board of education and the valid organization of the consolidated school district in controversy. Upon a trial of the issues the action was dismissed. Relators have appealed.

The litigation grew out of a dispute over the meaning of statutory provisions relating to the consolidation and organization of public school districts under chapter 243, Laws 1919, the title of which declares a legislative intent "to provide for the districting of all territory into districts for consolidated and high school purposes, and to provide for the organizing and operating of the same." Ever since the act went into effect its constitutionality or meaning has engaged the attention of the courts. *State v. Cox,* 105 Neb. 75; *Malin v. Housel,* 105 Neb. 784; *State v. Warrick,* 106 Neb. 750; *Dappen v. Weber,* 106 Neb. 812; *Dappen v. Weber,* 106 Neb. 817. In opinions from which the writer hereof dissented the act in the main was held to be constitutional but the legislative intent is still in doubt.

The consolidated school district in controversy includes the village of Benedict and adjacent territory formerly divided into a number of public school districts, each having a separate organization.

The act of 1919 seems to provide two methods of consolidation applicable to public school districts of different

classes. If a proposed new school district does not already contain an "organized consolidated or high school district," the method of consolidation is a majority vote of the school electors residing within the new boundaries. Laws 1919, ch. 243, sec. 5. "If the proposed new district contains an organized consolidated or high school district," the method of consolidation or annexation is a petition of not less than 51 per cent. of the "school electors in said new district residing outside of the existing organized consolidated or high school districts." Laws 1919, ch. 243, sec. 6.

Consolidated school district No. 3 of York county depends for its legal existence upon a majority vote of school electors therein. A proposition to establish the district was submitted at an election and carried by the requisite number of votes. The organization or consolidation is assailed by relators on the ground that the original school district in which the village of Benedict was situated was an "existing organized consolidated or high school" district within the meaning of the act of 1919, and that therefore the school electors residing in the new territory were without power to effect a consolidation by means of a majority vote, the procedure, relators assert, requiring a petition of 51 per cent. of the school electors "residing outside of the existing organized consolidated or high school" district. Laws 1919, ch. 243. Respondents defend the consolidation on the ground that the former school district in which the village of Benedict was situated was not a "high school district" within the meaning of the statute. The import of the term quoted is thus presented. The legislature of 1919 did not define it. The former legislation in which it appears uses it in different senses for different purposes. The act of 1919 was not amendatory in nature and could only be sustained as new legislation. *State v. Cox,* 105 Neb. 75. The former school laws do not contain the key to the solution, but must of necessity be consulted for light. The new act, for the purposes of consolidation, seems to deal with organizations and districts rather than

with the branches taught in the public schools or with the grades of different schools. In these respects there is a difference between high schools and high school districts. Under the general school laws of the state there are two systems of organization and government which remain unchanged. One is a democratic organization in which the school electors at annual or special meetings control generally the affairs of the public schools, the officers comprising a board of three members only. Rev. St. 1913, ch. 71, art. III. The other is representative in form and is governed by a board of six members, except as their powers in relation to taxes, to issuance of bonds and to other fiscal matters are limited by statute. Rev. St. 1913, ch. 71; *Gaddis v. School District,* 92 Neb. 701. Respondents, six in number, comprising the board of education, were elected at the annual meeting June 13, 1921, when the form of government was changed after the new district had been formed. The act of 1919 makes provision for changing the boundaries of existing common school districts organized under either system. In the first section it is declared:

"All of the territory in any county of the state shall be districted into districts for high school and consolidated school purposes according to and under the provisions of this act." Laws 1919, ch. 243, sec. 1.

The legislation, for the purpose of boundaries, seems to be aimed at old school districts as formerly organized and governed and to consolidation with districts having suitable or enlarged areas and better facilities for "high school and consolidated school purposes." It is natural to suppose, with this aim in view, that the old common school districts were in the legislative mind, when provision was made for determining the new method of organization, rather than the branches taught or the number of grades available to pupils. Reasoning from this premise, in view of the infirmities in the language used by the legislature, the interpretation of respondents appears to be more logical than that of relators.

While some high school branches were taught in the public school at Benedict and some high school grades were available to pupils there, the public school district, before the recent consolidation, had a board of the three members. If this democratic form of government with a board of three members determines the method of consolidation by a majority vote of school electors, the course pursued in the organization of consolidated school district No. 3 of York county was authorized by law, and this seems to be the more plausible view of the entire act of 1919, when considered in the light of former legislation. While this conclusion has not been reached without misgivings, it is in harmony with the interpretation of the other departments of government—an interpretation which courts may properly consider in construing a statute of doubtful meaning. The state superintendent of public instruction, acting within his powers as a public officer, expressed the following opinion:

"A school organized under article III with a three-member board, even though it taught some high school branches, was not a high school, within the meaning of section 6 of the 1919 redistricting law."

The legislature of 1921 apparently took the same view. It amended section 6 of the act of 1919 to include the following definition:

"For the purposes of this act the term 'high school district' shall be construed to mean any school district, comprising an incorporated village, town, city, or platted town or village maintaining one or more high school grades of school work approved by the state superintendent." Laws 1921, ch. 74, sec. 6a.

There was no occasion for this amendment if former legislation contained a definition or expression of the same import. By inference, therefore, the interpretation of the legislature of 1921 was the same as that of the state superintendent of public instruction and there does not seem to be a sufficient reason for a contrary ruling.

It is also urged by relators that there was no legal no-

State, ex rel. Stroman, v. Richardson.

tice of the election held and that therefore it was void. The posting of notices was the only method adopted. It was effective for the purpose of bringing school electors to the polls, but relators argue that there could be no valid election without the publication of notice in newspapers. The act of 1919 did not prescribe in specific terms how the notice should be given, but provided:

"The county superintendent shall order an election to be held in such proposed district at such central place as he may designate and shall give at least twenty (20) days' notice thereof required by law for holding school district elections." Laws 1919, ch. 243, sec. 5.

In the act of 1919 no direct reference is made to any specific law requiring notice of a school district election. The effect of such a reference would have been to incorporate by construction in the new law the terms of the old on the subject of notice. Relators refer to a number of school laws which require newspaper notice of elections for different purposes, but none of those laws is identified as the one describing notice "for holding school district elections" and which by adoption, had it been pointed out, would have become a part of the act of 1919. Since the legislature required elections for the purposes of consolidation in territory where there were no high school districts, or where the organization was democratic with a board of three members, it is more reasonable to suppose that the lawmakers meant the notice required in districts of that kind, namely, "by posting up copies thereof in three public places within the district." Rev. St. 1913, sec. 6732. Under this construction the new act specifies the time and the old act the kind of notice. Notice was thus given in the present instance. It was sufficient and seems to be in harmony with the more reasonable view of the new act in connection with former legislation on the subject of notice.

With the two principal questions thus determined, respondents have made a complete defense to the action. The writ was properly denied.

AFFIRMED.