J. LAWRENCE EASON, APPELLANT, v. THOMAS J. MAJORS ET AL., APPELLEES.

FILED NOVEMBER 26, 1923.    No. 23740.

Quo Warranto: RIGHT TO OFFICE AS TEACHER. In a case where a teacher, the head of the department of English in a state nor-

Eason v. Majors.

mal school, was dismissed by a letter from the president oı the board of education without vote or determination of said board according to law, and his place filled by another, who holds the same to his exclusion, and where such dismissal was without notice to said teacher and without cause, and was wholly unauthorized, and where said teacher had been employed by said board for practically a year to come, the application of said teacher for a writ of *quo warranto* to test the right of the teacher employed to take his place, and to test the force of such dismissal, will not be denied on the ground that his place or position was not an "office" within the meaning of the statute.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Reversed.*

*Sterling F. Mutz,* for appellant.

*O. S. Spillman, Attorney General, George W. Ayres* and *Kelligar & Ferneau, contra.*

Heard before MORRISSEY, C. J., ROSE and GOOD, JJ., SHEPHERD, District Judge.

SHEPHERD, District Judge.

The appellant, J. Lawrence Eason, was the head of the English department of the state normal school at Peru. In July of 1923, after he had completed the summer school work of that year, he received a letter of dismissal from the president of the state board of education, Thomas J. Majors, the appellee. This was without previous notice, for no cause stated, and after appellant had been engaged for the new year. The action of said president was not upon vote or determination of the board, as required by the statute in such cases, and was accordingly unauthorized and unlawful. Nevertheless, the president and the appellee, W. R. Pate, principal of the school, proceeded to fill appellant's place by appointing E. C. Beck, another of the appellees, thereto; and Beck took possession under his appointment and now claims the position to the exclusion of the appellant. Appellant did not care to hold by force or to create a disturbance, but at once sought explanation and redress by application to the president and to the board.

Individual members of the board gave him some information, but the president refused to answer his inquiries. Thereupon he brought this action in *quo warranto* to legally determine who had the right to the office or position in question, and whether his dismissal was effective. The trial court held against him on the one ground that he was not an officer within the meaning of the law, and therefore not entitled to maintain an action in *quo warranto*.

The facts above stated must be regarded as established, because they were well pleaded in the petition, and because the court's holding was upon demurrer admitting the same. Here is a case, then, in which the plaintiff is entitled to relief. The only question is, may he have it in *quo warranto?* Is that action available to him, a teacher and the head of a department in the Peru Normal?

We have a statute considerably extending the function of the ancient writ. It affords a remedy to the rightful claimant of any kind of an office, public or private. It is as follows:

"When any citizen of this state shall claim any office which is usurped, invaded or unlawfully held and exercised by another, the person so claiming such office shall have the right to file in the district court an information in the nature of a *quo warranto*, upon his own relation, and with or without the consent of the prosecuting attorney, and such person shall have the right to prosecute said information to final judgment; provided he shall have first applied to the prosecuting attorney to file the information, and the prosecuting attorney shall have refused or neglected to file the same." Comp. St. 1922, sec. 9305.

No restricted meaning is put upon the word "office." Ordinarily and according to Webster, the word would seem to cover well-nigh any position where authority is coupled with duty and where the duty is for a public purpose.

School districts, like municipal corporations, obtain their franchises from the state and are created for public purposes. *Dappen v. Weber*, 106 Neb. 812. In nearer degree are the normal schools of the state, created to teach and to

train teachers. Their government is committed by Con-
stitution and by statute to a board of seven, consisting of
the state superintendent, *ex officio,* and six other members
appointed by the governor with the consent of the senate.
Constitution, art. VII, sec. 13; Comp. St. 1922, sec. 6692.
Their teachers are appointed by this board, and ·receive
their salaries directly from the state, and necessarily
have some considerable discretionary powers. By section
6695 of the statutes it is provided that the board shall ap-
point "a principal, assistant teachers and such other em-
ployees as may be required for each normal school." Prin-
cipal and teachers seem to be catalogued as employees alike.
Yet in section 6700 of the statutes it is said: "The prin-
cipal of each school shall be the chief executive officer
thereof." Reasoning by analogy, it would seem that the
"assistant teachers," who must be assistants to the princi-
pal, are also officers, though perhaps subordinate officers.
Nor does it appear how they can be other than public offi-
cers, since their function is a public one partaking of the
purpose of the school itself.

When a position based upon a provision of law carries
with it continuing duties of public concern which involve
some exercise of the sovereign power in their proper per-
formance, the position may be said to be an office public
in character. Perhaps a better definition is that given by
the New Jersey court in *Fredericks v. Board of Health,* 82
N. J. Law, 200:

"An office is a place in a governmental system created
or recognized by the law of the state which, either directly
or by delegated authority, assigns to the incumbent thereof
the continuous performance of certain permanent public
duties."

In the case cited it was held that a sanitary inspector ap-
pointed by a legal board of health under power conferred
by the health act of the state is the incumbent of an office.
Can it be said that the teacher who distributes the bounty
of the state is less engaged in a public duty than such an
inspector? The teacher has a special place by the nature

of things in the governmental system, so far as it provides for education. He is appointed and paid by the state. His place—we may well say his office—is created by the state because only through him can its free education be transmitted. Nor is he a mere conduit. Quite the contrary. For education can not be poured out to people like water from a pitcher. It must be carried to them in such a way as to engage their interest and reach their understanding, a labor involving knowledge of method, exercise of authority, and wide use of discretion. A teacher must prescribe courses, establish discipline, convince, lead. In the due performance of his duty he not only engages in a work of public concern, but wields a portion of sovereign power.

Many different positions, though undoubtedly employments, have been held by the courts to have the attributes of public office, and to be offices. Instances are as follows: The position of assistant clerk of the orphans' court, *Evans v. Luzerne County,* 54 Pa. Super. Ct. 44; the place of a jailer, *Sullivan v. McOsker,* 84 N. J. Law, 380; the place of a prison guard, *Page v. O'Sullivan,* 159 Ky. 703; the position of a policeman, *Reising v. City of Portland,* 57 Or. 295; *Blynn v. City of Pontiac,* 185 Mich. 35; the position of treasurer of a public institution whose trustees were appointed by the governor, by and with the advice and consent of the senate, *Illinois Industrial Home v. Dreyer,* 150 Ill. App. 574. But it cannot be denied that in many similar cases the courts of the country have held that such positions and places are mere employments having none of the requisites of an office. In the case cited by the appellees, *Hartigan v. Board of Regents,* 49 W. Va. 14, the judge who wrote the majority opinion says that, in approaching the simple but difficult question of what constitutes an office, he was struck by the wilderness of law upon the subject. And I might properly add from my investigation that the decisions upon the question are hopelessly apart. In the case referred to, the president of the court in writing the majority opinion stated that great differences of view had been expressed in consultation, and Judge Dent in writing

Eason v. Majors.

a dissenting opinion denounced the holding of the majority as contrary to the weight of judicial decision both in West Virginia and throughout the country, and utterly subversive to law.

A case in our own court is cited by the appellee (*State v. Smith*, 49 Neb. 755) in which the court said: "A contract to teach in one of the free schools of the ordinary districts is one of employment. The district, represented by the board, is an employer, and the teacher an employee. The teacher in such schools is not a public officer." It is to be observed, however, that this statement was entirely dictum. There were two points upon which the court held, as shown by the opinion, in affirming the decision of the lower court. First of all the remedy sought was by mandamus, and the court said that mandamus was not the proper method to test the holding of an office; and in the second place the relator was not the teacher who had been dismissed and who claimed reinstatement. The relators were aggrieved residents of the school district, and could not in any case be held in *quo warranto,* since none of them claimed the position or office in question. *State v. Stein,* 13 Neb. 529. Moreover, in that case it was not admitted, as in the case at bar, that the school-teacher was unlawfully dismissed, and, in addition to this, it was evident that said teacher had an adequate remedy at law. In that case, also, there was cause assigned for the dismissal of the teacher. None is here pretended. In the West Virginia case, *supra,* it was stated in the majority opinion that by practice, if not by statute, the regents had the right to dispense with the services of any professor upon 60 days' notice and by giving him pay for that period, and that the plaintiff was aware of and bound by this provision. In this case it is admitted by the demurrer that the relator had been engaged for another year. All of these considerations lead us to believe that the rule stated in the Nebraska case cited should not prevent us from giving the relator relief in this case.

No reason is apparent for denying the remedy of *quo warranto* to try the title to office in the instance of private

employment, except that there is an adequate remedy in damages. In the instant case there is no remedy in damages, because the contract, if there be a contract, has not been broken. Of course, plaintiff could have no remedy in damages if he was not legally dismissed. If he should sue the board of education for damages, the board would have the defense that the contract was not broken, and that plaintiff is still the elected, qualified and acting head of his department. And neither injunction nor mandamus will lie.

In Black's Law Dictionary, the term "office" is defined as "a right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging, whether public, as those of magistrates, or private, as of bailiffs, receivers, or the like." In 29 Cyc. 1361, it is said that an office is "a right to exercise a public or private employment and to take the fees and emoluments thereunto belonging." And in the case of *Rowland v. Mayor,* 83 N. Y. 372, the judge said: "Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find that whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold or be in office."

We think that the language of our statute extends the remedy of *quo warranto* to the appellant in this case, and that the judgment should be reversed and the cause remanded to the district court for further proceedings in accordance with this opinion and holding.

REVERSED AND REMANDED.