REQUESTED BY: Senator George Coordsen, Nebraska State Legislature
LB 407 would establish the Child Support Commission (the "Commission") in Nebraska. That Commission would be made up of: 1. two professionals who work in the field of economics, mathematics, or other field of expertise relevant to child support, 2. two judges whose jurisdiction includes domestic relations, 3. two members of the Nebraska State Bar Association who practice domestic relations, 4. two members of the Nebraska Legislature, 5. a custodial parent and 6. a noncustodial parent. Some of the members of that Commission would be appointed by the Nebraska Supreme Court and others would be appointed by the Legislature. Under the bill's provisions, the Commission would review the child support guidelines established by the Nebraska Supreme Court under Neb. Rev. Stat. § 42-364.16 (1998), and make recommendations, if appropriate, concerning amendments to those guidelines in an annual report to the Legislative Council and the Supreme Court. Section 4 (3) of the bill also provides that:
 The Supreme Court shall review the commission's report. The Supreme Court may amend the child support guidelines established pursuant to section 42-374.16 based upon the commission's recommendations.
You are apparently concerned that officials from multiple branches of government would serve on the Commission under the terms of LB 407. You have therefore requested our opinion as to ". . . whether LB 407 is in conflict with Article II, Section 1
of the Nebraska Constitution [dealing with distribution or separation of governmental powers], and more specifically whether it is in conflict with the "Conway rule" set forth in State exrel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991)."
In our Op. Att'y Gen. No. 93008 (February 19, 1993), we considered the constitutionality of a bill which would have created government committees made up of representatives from different branches of state government to study government efficiency. We will quote from that previous opinion at length, because much of the analysis there is directly pertinent to the matters raised in your opinion request:
Article II, Section 1 of the Nebraska Constitution provides that:
 The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.
Since LB 355 requires each of the various government assessment committees to be made up of representatives of different branches of government, there is some question as to whether the bill would violate Article II, Section 1. We assume that concern was partially the reason for your opinion request.
The Nebraska Supreme Court most recently dealt with Article II, Section 1 of the Nebraska Constitution in Stateex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991). In the Conway case, the court held that state Senator Gerald Conway could not both serve in the Legislature and also act as an assistant professor at Wayne State College. The court indicated that such dual service violated Article II, Section 1 since Senator Conway was an officer in the Legislative branch of government and also an employee within the Executive branch of government through his employment at Wayne State. In the course of the Conway opinion, the court set out the following rule which governs the application of Article II, Section 1 to the activities of government officials:
. . . article II prohibits one who exercises the power of one branch — that is, an officer in the broader sense of the word — from being a member — that is, either an officer or employee — of another branch.
Id. at 782, 472 N.W.2d at 412.
While the application of the Conway rule is clear in the factual context of that case, application of the rule in other situations can be more problematic. As a result, we have issued several opinions subsequent to Conway which deal with application of the rule to various fact situations. See
Op. Att'y Gen. No. 92115 (October 1, 1992) (Supreme Court Judges could serve on Judicial Nominating Commissions); Op. Att'y Gen. No. 92076 (June 3, 1992) (Members of the Judicial branch could serve on the Youth Services Planning Committee but not on the Juvenile Services Grant Committee); Op. Att'y Gen. No. 92073 (May 28, 1992) (Judges could serve on the Judicial Resources Commission); Op. Att'y Gen. No. 92022 (February 18, 1992) (Judicial branch employees could serve on the Juvenile Justice Advisory Committee but not on the Crime Commission). Apart from these opinions specifically dealing with the effect and application of the Conway rule, we have also written numerous other opinions, before and after the Conway decision, dealing generally with members of the Legislature serving on boards or committees of another branch of government. See Op. Att'y Gen. No. 92046 (March 19, 1992) (Members of the Legislature cannot serve on the Nebraska School Accountability Commission); Op. Att'y Gen. No. 91016 (March 13, 1991) (Members of the Legislature cannot generally serve on commissions, boards or committees housed in the Executive branch of state government); Op. Att'y Gen. No. 86038 (March 21, 1986) (Members of the Legislature could serve on an educational service unit planning committee); Op. Att'y Gen. No. 69 (April 23, 1985) (The Chair of the Legislature's Revenue Committee could not serve on a Agricultural Land Valuation Advisory Board); Op. Att'y Gen. No. 37 (April 4, 1983) (Members of the Legislature could not serve along with the Governor and the Tax Commissioner on a State Tax Board which would take the place of the State Board of Equalization); 1967-68 Rep. Att'y Gen. 120 (Opinion No. 86, July 7, 1967) (State Senators could not serve as members of the Nebraska Coordinating Council for Higher Education).
It obviously is difficult to generalize the application of the Conway rule to all the various fact situations which have developed or may develop in state government. However, most often, the acceptability of a particular statutory plan which combines members of more than one branch of government on the same body seems to turn on whether the proposed body creates new state officers, as that term is legally defined, within a particular branch of government. If the members of the newly created governmental body are state officers, then there are potential problems with the Conway rule. On the other hand, if the new body does not create state officers, then, in most instances, the positions created do not involve an employment relationship, and there is no problem under Conway.
The Nebraska Supreme Court has indicated that an office is "a public station or employment, conferred by the appointment of government; and embraces the ideas of tenure, duration, emolument and duties." State ex rel. O'Connor v.Tusa, 130 Neb. 528, 535-536, 265 N.W. 524, 528 (1936). Indicia of a public office include: 1. creation by constitution or a statute, 2. a continuing position not occasional or contractual, 3. a fixed term of office and 4. the official has an independence beyond that of employees.Eason v. Majors, 111 Neb. 288, 196 N.W. 133 (1923). With respect to the authority of public officers, the Court inConway stated, "[i]t may be said that the almost universal rule is that, in order to indicate office, the duties must partake in some degree of the sovereign powers of the state." 238 Neb. at 771, 772, 472 N.W.2d at 407. As a result, a public office is "a governmental position, the duties of which invest the incumbent with some aspect of the sovereign power." Id.
Op. Att'y Gen. No. 93008 (February 19, 1993) 2-4. In the present situation, it does not appear to us that the members of the Child Support Commission proposed by LB 407 would be employees of the State of Nebraska under that bill. Therefore, as was the case in Opinion No. 93008, the constitutionality of LB 407 under art. II, § 1 turns on whether the members of the Commission would be officers of the State of Nebraska by virtue of their service on the Commission.[1] In that regard, the definition of "office" remains the same as that described in Opinion No. 93008.
Under the provisions of LB 407, the Child Support Commission would be established by statute. In addition, the bill would establish statutory appointment procedures for members of the Commission, and Commission members would have a term of office and specific statutory duties. These are all indicia of public office. On the other hand, the Commission could hire consultants, researchers and other support staff only with the prior approval of the chairperson of the Executive Board of the Legislative Council. More importantly, the Commission's recommendations would be advisory only, and the Supreme Court would not be bound to amend its child support guidelines based upon the Commission's recommendations.
All things considered, we do not believe that members of the Child Support Commission proposed under LB 407 would be officers of the State, primarily because their role would be advisory only and, as a result, they would not exercise any of the sovereign powers of State government. That conclusion is supported by the result in Op. Att'y Gen. No. 92073 (May 28, 1992). In that opinion, we considered the constitutionality of the Judicial Resources Commission, a commission made up of judges, members of the bar, and citizens which made recommendations to the Legislature as to the existence of judicial vacancies and the boundaries of judicial districts. While statutory appointment procedures existed for membership in the Judicial Resources Commission and its members were appointed for a specific term of office and had specific statutory duties, we concluded that members of that Commission were not state officers because its recommendations were advisory only, and therefore, its members did not exercise any powers of the state. Op. Att'y Gen. No. 92073 (May 28, 1992) 3, 4. For much the same reasons, we do not believe that members of the Child Support Commission proposed by LB 407 would be state officers. Consequently, in our view, that bill is permissible under art. II, § 1 of the Nebraska Constitution.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
cc. Patrick O'Donnell Clerk of the Legislature
Approved by:
Don Stenberg 
Attorney General
[1] If the members of the Child Support Commission are state officers, LB 407 would likely also violate art. IV, § 10 of the Nebraska Constitution, since the bill would involve a legislative appointment. See Neeman v. Nebraska Resources Commission,191 Neb. 672 at 676, 217 N.W.2d 166 (1974); Op. Att'y Gen. No. 69 (April 23, 1985).