ED. B. COWLES, PLAINTIFF IN ERROR, V. SCHOOL DISTRICT NO. 6 OF JEFFERSON COUNTY, DEFENDANT IN ERROR.

1.  School District: BOUNDARIES.  The power to change the boundary of a school district rests with the county superintendent, and is to be exercised by him at his discretion, only upon petition signed by one-third of the legal voters of such district.

2.  ———: ———: DISCRETION OF COUNTY SUPERINTENDENT. No cause of action will accrue to the district, as a corporation, against the county superintendent for the manner in which he may exercise his discretion in changing the boundary of such district upon a petition signed by at least one-third of the legal voters thereof.

ERROR to the district court for Jefferson county.  Tried below before MORRIS, J.

*C. B. Letton,* for plaintiff in error, cited: *State v. School District,* 18 Neb., 644.    *State v. Nelson,* 21 Id., 572. *Ingalls v. Noble,* 14 Id., 272.

*S. N. Lindley,* for defendant in error, cited: *Jones v. Hurlburt,* 13 Neb., 126.    *Follmer v. Nuckolls County,* 6 Id., 213.    *Normand v. Otoe County,* 8 Id., 18.    Dillon Mun. Corp., Sec. 9.

COBB, J.

This was an action in equity for an injunction, brought by school district No. 6 of Jefferson county against E. B. Cowles, county superintendent of Jefferson county.

After setting forth the character of the plaintiff as a school district, and the official character of the defendant as superintendent of said county, the petition alleges that, on and before the 7th day of August last, the said school district comprised and embraced the following described territory, situate wholly within said county, to-wit: sections, 28, 29, 32, 33, and 34, in township 2 north, of range 2 east, and sections 3, 4, 5, and 10, in township 1 north, of range 2 east, and so has been for many years prior to that date, and said district was provided with a good school building, conveniently located, was practically free from debt, and all of the inhabitants were supplied with all necessary school facilities and advantages under the laws, and no good reason existed for changing the boundaries thereof or otherwise disturbing the same; that on or about the 2d day of August, 1886, certain persons residing within the territory of said district, but not within the territory to be affected by such order, applied to the defendant, as superintendent, by petition, asking defendant to turn out of, and strike off from, said district certain territory thereof, to-wit: Sections 28 and 32, in township 2, range 2 east, and section 5, in township 1, range 2 east, to form a new school district; also that defendant did thereupon, at the request of said persons so petitioning, proceed to strike off from said school district the territory last above described, and excluded the persons residing therein from membership and connection with said school, contrary to the wishes and against the will of each and every voter therein residing upon said territory so struck off or affected by such order; that said action and order of said defendant was and is wrongful and unlawful, and was made and entered by defendant without any good and sufficient reason or authority in law, and ought to be held as null and void, for the following reasons:

1. Because the several persons who signed said petition were not, any of them, residents and voters within the

territory so struck off and turned out of said school district and affected by said order, and they had no right under the law to so petition. All of which said defendant well knew when he made said order.

2. Because said petition was not signed by any voter residing within the territory to be affected by said order; but on the contrary were each and every one of them opposed to the making of such order, as defendant well knew.

3. Because no single voter within said territory so struck off has ever petitioned for the erection of a new school district to be composed, either wholly or in part, of said territory so struck off or affected by said order, as defendant well knew.

4. Because said petition was not, and is not, sufficient in substance to confer authority upon said defendant to act in the premises.

5. Because no lawful notice of said petition, its contents, or when to be presented, was posted for the time or in the places required by law.

6. Because an oath of a resident of the district affected, that such notice has been properly posted, was not filed with defendant.

7. Plaintiff avers that the observance and performance of these several matters were conditions precedent, under the laws of Nebraska, without which, and the legal proof and record thereof, said defendant, superintendent, had no power, authority, or jurisdiction to make the order herein complained of, and that for the want thereof his said action and order in the premises, in striking off, and turning away from said school district the said territory (describing the same), was unlawful, unauthorized, and void.

8. Plaintiff further averred that the entire body of inhabitants and voters residing upon said territory so struck off are thereby wrongfully and unlawfully debarred from school privileges in the district in which they rightfully belong, and plaintiff, school district, is debarred, prevented,

42

and deprived of the benefits of the taxes rightfully belonging to plaintiff arising and accruing from said territory so detached by said order. That said inhabitants, voters, and tax-payers of said detached territory have resided therein, paid taxes for school-houses, furniture, teachers' wages, etc., for many years, until all of plaintiff's indebtedness therefor has, by their aid and taxation, been liquidated and paid off, and that it is not right, just, nor lawful to now drive them forth, against their will, and without their consent, to begin a new life in a new district where they must be compelled to travel over the same hard path of taxation and expenses for school privileges.

9. That there is no complete, speedy, or adequate remedy at law, etc. With prayer that said order and all of defendant's proceedings pursuant to said petition be adjudged and decreed to be without jurisdiction, and null and void, etc.

The defendant demurred, both specially and generally, to the petition. Upon the hearing, the court overruled the said demurrer. Thereupon the cause; coming on further to be heard, and the defendant declining further to plead or answer, findings and a decree were rendered for the plaintiff.

The defendant brings the cause to this court on error, assigning the following errors:

1. The court erred in overruling the demurrer to the plaintiff's petition.

2. The court erred in rendering judgment in favor of the defendant in error and against plaintiff in error.

The gravamen of the petition seems to be, that the county superintendent had proceeded to divide the school district (plaintiff) without a petition of the voters, inhabitants of the original district, who reside in that portion of it which is, or proposed to be, set off for the purpose of forming a new district. I quote that part of the section of the statute applicable to the powers and duties of

county superintendents and others in the formation of new districts:

"Sec. 4. New districts may be formed from other organized districts, and boundaries of existing districts may be changed, under the following conditions only: *First.* It shall be the duty of the county superintendent to create a new district from other organized districts upon a petition signed by one-half of the legal voters in each district affected. *Second.* The county superintendent shall have discretionary power to change the boundary of any district, upon petitions signed by one-third of the legal voters in the district affected. *Third.* The county superintendent shall not refuse to change the boundary line of any district, or to organize a new district, when he shall be asked to do so by a petition from each school district affected, signed by two-thirds of the legal voters in such district." Comp. Stat., Ch. 79, Subdv. I.

These provisions are mandatory, and may, I think, be classed as jurisdictional. So far as appears by the allegations of the petition, they were all fully complied with in the case under review. The section above (in part) quoted was passed by the legislature at the session of 1883, and went into force Feb. 28, 1883. The law as it stood previous to the passage of said act was essentially different. The provisions of the section as it then stood, corresponding to the provisions above quoted, were as follows:

"Sec. 4. New districts may be formed from other organized districts under the following conditions only: *First.* The county superintendent shall have discretionary power to change the boundary of any school district, or to form a new district from one or more districts on a petition signed by one-third of the legal voters in each district affected. *Second.* The county superintendent shall not refuse to change the boundary lines of any district, or to organize a new district, when he shall be asked to do so by a petition from each school district affected, signed by

two-thirds of all the legal voters in such district." Comp. Stat. 1881, Ch. 79, Subdv. I.

In the act as it formerly stood, as last above quoted, the discretionary power of the county superintendent extended to the changing of the boundaries of any school district, and to the formation of a new district from one or more districts, but restricted such action, in either instance, to cases where the same is on a petition signed by one-third of the legal voters in each district affected, while in the section as it now stands, as first above quoted, his discretionary power extends only " to change the boundary of any district upon petitions signed by one-third of the legal voters in *the district* affected." The law here does not seem to regard the district which is to be added to, and the one which is to be divided it regards as a unit, and does not distinguish between that part of it which is detached, or, in the language of the petition, " struck off and turned out," and that which is retained. In other words, it is the district in its entirety, before the change of boundary from which the petition is to come, and one-third of the legal voters of which must sign it. From the sworn list of legal voters and copy of the petition of voters, attached to the petition in the action as an exhibit, it appears that not only one-third but only one less than two-thirds of the legal voters of said original or entire district petitioned for said change of boundaries. So that so far as the petition is concerned, the authority of the county superintendent to make the change in the boundary of the district is ample.

The laws of this state, as well by policy as by letter, have left the control of the boundaries of school districts, primarily, with the legal voters of each district respectively. It is true that, in the case of the change of boundaries, the concurrence, by petition, of one-third of the legal voters, with the discretionary action of the county superintendent, by the legislative plan constitutes a majority. After the first or original organization of a new county into one or

more school districts, no new district can be formed, old one altered, or the boundaries of any altered, without the movement therefor originating with the legal voters thereof, and their will to that effect being expressed by petition of the strength prescribed by statute.   These are matters with which the school district, as a corporation, or *quasi* corporation, has been vested with neither power nor duty, nor has any district officer, board, or school meeting; but they rest with the voters in their capacity of petitioners, and with them alone.   These voters havë not complained. In the case at bar a large majority of the legal voters of the district, which, in its corporate capacity, appears as plaintiff, signed the petition.    But had it only been signed by one-third, it would be possessed of the same legal quality.

The question here presented is, can the school district, as a corporation, maintain an action in the courts in a case involving the duties, privileges, rights, and powers of the legal voters, in conjunction with the discretionary power of the county superintendent, and involving no property or contract, right, or interest of the corporation?

Speaking of school and road districts, Dillon says: "They are purely auxiliaries of the state, and to the general statutes of the state they owe their erection, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all the liabilities to which they are subject."

"School districts are *quasi* corporations of the most limited powers known to the laws.   They have no powers derived from usage, their existence extending back but a few years.   They have the powers expressly granted them, and such implied powers as are necessary to enable them to perform their duties and no more."   *Harris v. School District No. 10, in Canaan*, 28 N. H. R. (8 Foster), 58.

Our statute, Sec. 2, Subd. I., Chap. 79, Comp. Stats., provides that, "Every duly organized school district shall

be a body corporate and possess all the usual powers of a corporation for public purposes, by the name and style of 'school district number ... of ...... county,' and in that name may sue and be sued, purchase, hold, and sell such personal and real estate as the law allows."

It would be idle to attempt an enumeration of the various powers and duties of the several school district officers, or the powers of the district as a corporation, as provided and prescribed in the statute, but I may safely repeat, that nowhere is a power given to, or recognized in, such corporation, or duty prescribed to any officer thereof, to in any manner interefere with a question of district boundary, in a case like that under consideration. It therefore follows that the facts alleged in the petition constitute no cause of action on the part of the plaintiff against the defendant, and that the demurrer thereto ought to have been sustained.

The judgment of the district court is reversed, and the cause remanded to that court, with a direction to sustain the demurrer.

REVERSED AND REMANDED.

THE other judges concur.