THE STATE, EX REL. JAMES L. SHULL, v. W. M. CLARY, COUNTY SUPERINTENDENT, ETC.

Schools: DIVISION OF DISTRICTS. The duty imposed upon a county superintendent of public instruction by the first numbered clause of section 4 of chapter 79 of the Compiled Statutes, in relation to the division of school districts, the change of school district boundaries, and the formation of new districts, is a *quasi-judicial* duty; from his final decisions in regard to which, an appeal lies to the district court of the proper county, and which this court will not control by mandamus.

ORIGINAL application for mandamus.

*F. E. Brown,* for relator.

*W. M. Clary,* for respondent.

COBB, J.

This is an original application for a mandamus to compel respondent, who is county superintendent of Otoe county, to divide school district No. 66, in said county, and to erect a new school district. The relator sets forth the condition of said district, the number of sections and subdivisions of sections which it contains, the number of children of school age residing therein, the amount of assessed value of property therein, and other matters tending

to show the necessity of such division and the erection of the district contemplated. Also the proceedings, consisting of the signing of a petition of more than one-half of the leading voters of the district praying for such division, which presentation of the petition to such superintendent was made after the proper notice, as provided by statute, and a list of the legal voters of the district affected,. together with the oath of a resident of the district that the legal notice provided by law had been properly posted,. which was also given to the superintendent of the county at the time of presenting the petition praying for the division of the district, together with all other necessary proceedings for the purpose of giving said superintendent jurisdiction, and of imposing on him the duty of dividing said district, and tending to show the public convenience and propriety of such division. And that the superintendent refused to divide said district as prayed for, with an application for peremptory mandamus, and for relief.

The respondent answered, admitting the presentation of the petition, in the month of March, 1888, to divide said district No. 66; that it was signed by one-half the whole number of voters, but was not signed by two-thirds of the voters of the district; and that, after hearing all of the parties, going over all the grounds, and investigating the whole matter, he refused to divide the same, because, in his judgment, the petition ought not to have been granted, on account of the inequality of the number of scholars in the old and new district, as well as other considerations not important to follow for the purposes of this opinion.

The cause was argued and submitted as on demurrer to the answer. Two questions are presented for the decision of this court: *First,* Is it the duty of a county superintendent to divide a school district, and erect a new district out of a portion thereof, upon a petition of one-half of the whole number of legal voters of the original district? *Second,* When an application to do an official act is made to any

tribunal, board, or officer inferior to the district court, from whose action or refusal to act appeal lies to the district court, and such tribunal, board, or officer makes investigation, takes deliberation, and thereupon refuses to grant the action, order, or judgment applied for, will mandamus lie to this court to compel action favorable to the applicant?

Counsel for the relator, in his brief, contends that, as the petition for the division of the district was signed by a majority of the legal voters, there was no discretion left to the county superintendent, but that on the presentation of the petition, and the taking of the other steps provided by statute, as in the case at bar, it became his imperative duty to make the division. In support of this he cites the statute of 1883, Sec. 4, that, "New districts may be formed from other organized districts under the following conditions only: *First*, The county superintendent shall have discretionary power to change the boundary of any school district, or to form a new district from one or more districts, on a petition signed by a majority of the legal voters in each district affected. *Second.* The county superintendent shall not refuse to change the boundary lines of any district, or to organize a new district, when he shall be asked to do so by a petition from each district affected, signed by two-thirds of all the voters in such district;" and the amendment of the same act, of 1885, that, "it shall be the duty of the county superintendent to create a new district from other organized districts, upon a petition signed by one-half of the legal voters in each district affected. *Second.* The county superintendent shall have discretionary power to change the boundary of any district upon petitions signed by one-third of the legal voters in the district affected. *Third.* The county superintendent shall not refuse to change the boundary line of any district, or to organize a new district when he shall be asked to do so by a petition from each school district affected, signed by two-thirds of all the legal voters in such

district." Counsel contend that while under the statute of 1883 it was a matter of discretion on the part of the superintendent to make such division, on the petition of one-half of all the legal voters, that under the amendment of 1885 such discretion was taken away, and it thenceforward became his absolute duty to make it. The statute of 1883 by the first clause gave to the superintendent discretionary power " to change the boundary of any school district, or to form a new district from one or more districts, on a petition signed by a majority of the legal voters in each district affected." Under the second clause it provides that, " he shall not refuse to change the boundary lines of any district, or to organize a new district when he shall be asked to do so by a petition from each district affected, signed by two-thirds of all the legal voters in such district."

The amended statute of 1885 divides these powers and duties into three clauses: First, "to create a new district from other organized districts upon a petition signed by one-half of the legal voters in each district affected." Second, the exercise of discretionary power to change the boundary of any district upon the petition of one-third of the legal voters of any district affected; and Third, that he shall not refuse to change the boundary line of any district, or to organize a new district, when he shall be asked to do so by petition from each school district affected, signed by two-thirds of all the legal voters in such district. We here have it made the *duty* of the superintendent to perform certain acts, under certain conditions, which, under the act of 1883, he had the discretionary power to do, or not to do, at his pleasure. But, in its wisdom, the legislature added the further provision that he should not refuse to perform this official act under circumstances and upon conditions somewhat different. In the case of conflicting provisions of statutes, courts will seek to reconcile their terms, if possible, so as to give some effect and meaning to the provisions of each. There

can be no doubt that it was the intention of the legislature·
to make it the imperative duty, one which the superin-
tendent is equally forbidden to refuse, to change the
boundary line of any district, or to organize a new dis-
trict, when he shall be asked to do so by petition from
each school district affected, signed by two-thirds of all
the legal voters of such district. Now would the legisla-
ture have framed this provision with the earnestness and
care which seem to have attended its construction, after
having already made it the duty of the same officer to
perform the same official act upon a petition signed by but
one-half the legal voters of each district affected? A con-
sideration of the third clause inclines one to the opinion
that the word "duty," as used in the *first* clause, must be
construed to mean rather a judicial discretion, than as
duty to be enforced by the authority of *mandamus.*

Section 580 of the code provides that, "a judgment ren-
dered, or final order made, by a probate court, justice of
the peace, or any other tribunal, board, or officer exercising
judicial functions, and inferior in jurisdiction to the district
court, may be reversed, vacated, or modified by the district
court."

In the case of the *State, ex rel. Donovan, v. Palmer,* 18
Neb., 644, an application for mandamus to compel the
school board of district No. 7, of Colfax county, to per-
mit the children of the relator to attend the public school,
Mr. Justice MAXWELL, in delivering the opinion of the
court, said: "To secure efficiency in the system, the
school districts and schools of each county are placed un-
der the general supervision of a county superintendent.
He is invested with power, upon proper petitions being
filed in his office, to create, divide, or change a school dis-
trict or districts, and if he acts within the scope of his
authority his orders are not subject to collateral attack.
No doubt such an order is final within the provisions of
section 580 of the code, and subject to review."

The county superintendent may, without violation· ol language or logic, be held to be an officer exercising judicial functions, within the language of the section of the code mentioned, and such is the holding of the court in the case referred to.    As we have seen in considering the first point, it was the intention of the legislature to confer upon such officer a judicial power coupled with a duty.

By the language of the first clause of the section under consideration, the signing of the petition, as stated by the relator, conferred· upon said superintendent jurisdiction of the matter as set out in the answer.    He entered upon the examination and consideration of the subject thus presented, but juridicially determined against the prayer of the petition.    This presented a proper case, to the aggrieved parties, for appeal to the district court.    That being the case, under the authority and precedent of *Brown v. The County of Otoe*, 6 Neb., 111, and other subsequent cases, the remedy by appeal must be held to be exclusive, and the writ applied for must, therefore, be denied.

WRIT DENIED.

THE other judges concur.