RALPH CACEK ET AL., APPELLANTS, V. H. W. MUNSON ET AL., APPELLEES.

69 N. W. 2d 692

Filed April 8, 1955. No. 33690.

*Dryden, Jensen & Dier,* for appellants.

*Vasey & Rist,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, as residents, taxpayers, and members of the school board of School District No. 78 in Gage County, brought this injunction suit against defendants, county superintendent and county treasurer of Gage County, together with the respective school boards of several hereinafter enumerated school districts in Gage County. Plaintiffs' original petition was filed May 21, 1954, in the district court for Gage County. Thereafter, on July 2, 1954, they filed an amended petition which alleged, insofar as important here, that defendant district No. 74 of Gage County is a Class II school which operates a high school at Odell; that under the provisions of section 79-402, R. S. Supp., 1953, such district and all other defendant districts involved, together with district No. 78, filed petitions with defendant county superintendent praying that each and all of their boundaries should be changed so that they would be added

to and made a part of district No. 74; and that if said petitions were correct, the county superintendent would be required by statute to include school district No. 78, which would cause such district to lose its identity, dominion, and control over its school activities, and require its residents to thereafter pay taxes for the support of consolidated school district No. 74, which taxes when levied and to be collected by defendant county treasurer would be and become a lien upon the property owned by them. They alleged that the petition filed with the county superintendent, purporting to have been signed by 55 percent or more of the legal voters of district No. 78, did not factually represent 55 percent or more of such legal voters, because one signer, although a resident of district No. 78, was not a qualified legal voter and should not have been so counted by the county superintendent. Therefore, "That said action on the part of H. W. Munson in including said School District #78 in a merger plan, is and should be decalred (sic) null and void, in that he declared that School District #78 be included in said merger above described, as shown in his 'Findings and Order,' dated May 20, 1953, a certified copy of which is attached hereto, marked Exhibit A, and by reference made a part hereof."

Plaintiffs' prayer was that the "Court issue a permanent injunction against the defendants and each of them, restraining them from taking any action, either individually or in concert, from asserting any dominion, control, taxation, or attempting to assert dominion, control or taxation over said District #78, and from interferring (sic) or in any way affecting the rights of the parties plaintiff in their official duties as board members of School District #78 in the discharge of their duties therein, and for such other and further relief as the Court may find just and equitable."

On July 15, 1954, defendants filed a motion to dismiss plaintiffs' amended petition for the reason that the

trial court was without jurisdiction to hear and determine in this action the matters set forth therein. After hearing thereon, such motion was sustained and plaintiffs' amended petition was dismissed substantially upon the ground that the county superintendent had jurisdiction to hear and determine the matters about which plaintiffs complained, and having duly considered and determined them by the order rendered May 20, 1953, and made a part of plaintiffs' petition, such order was final and reviewable only by error proceedings as provided by law. Therefore, injunction could not be maintained by plaintiffs. Plaintiffs' motion for new trial was overruled, and they appealed, assigning that the trial court erred in finding that plaintiffs' action was a collateral attack, and in dismissing plaintiffs' amended petition for want of jurisdiction to hear the action. We conclude that the assignments should not be sustained.

As in Reller v. Ankeny, *ante* p. 47, 68 N. W. 2d 686, since the parties herein without timely and proper objection made in the district court, treated defendants' motion to dismiss as the equivalent of a general demurrer in order to test the sufficiency of plaintiffs' amended petition to state a cause of action, it will be so treated on appeal to this court. In Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150, we held: "A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact.

"In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof, if the allegations stated therein either aid the petition in stating a cause of action or charge facts going to avoid liability on the part of the defendant." See, also, Reller v. Ankeny, *supra*.

Insofar as important here, the finding and order of the county superintendent, a copy of which was marked Exhibit A and made a part of plaintiffs' amended pe-

tition, reads as follows: "On this 20th day of May, 1953, at ten o'clock a. m., I, the undersigned, County Superintendent of Schools of Gage County, Nebraska, proceeded to conduct a hearing on the separate petitions of legal school voters of Gage County School Districts numbered 86, 134, 87, 118, 130, 94, 88, 154, 112, 78 and 98 and the petition of the Board of Education of School District number 74, Gage County, Nebraska, for a change of boundaries of each of said numbered districts by adding each of said districts * * * (hereinafter sometimes referred to as rural districts), to said School District number 74.

"I find from an examination of the proof of service of notice of said hearing heretofore directed to be given by me, and now on file in my office, that notice of said hearing has been duly given as ordered, and hearing being convened at the time and place stated in the notice, I then announced that I had the jurisdiction and authority to proceed with hearing. I announced the purpose of the hearing, and thereupon proceeded with such hearing, and herewith make the following special findings.

"I find that the petitions of each of said rural school districts request and petition me as County Superintendent of Schools of Gage County, Nebraska, to change the boundaries of each such district by adding each of said rural districts to said School District number 74, * * *.

"I further find that the petition of said School District number 74 petitions and requests me as said County Superintendent of Schools to change the boundaries of said District number 74 by the addition of said numbered rural districts, or such of them as may be so lawfully added, * * *.

"I thereupon separately examined and considered the petitions of each of said rural districts, to determine whether 55% of the legal voters in each district had petitioned for the addition of such district to said School

District number 74, and as to each rural district I find as follows: * * *

"j. With respect to said School District number 78 I find that said School District has 43 legal school voters, included among whom is one Velda Cacek, whose name did not appear on the list of voters certified on the original petition requesting said change of boundaries, but who was determined to be a legal school voter of said School District number 78 during said hearing. I further find that of said number of legal school voters 28 have legally signed said original petition requesting said change. I find, however, that of the voters who signed said original petition 10 thereof subsequently signed and filed with me a petition requesting that their names be withdrawn from said original petition. I further find that of those legal voters requesting that their names be withdrawn from said original petition, 6 of said legal voters filed their petitions requesting that their names be not withdrawn from said original petition but remain thereon, and said petitioners requested said change and joined with the petitioners on said original petition requesting said change so that I find that of the 43 legal school voters in said School District number 78 24 have legally petitioned for said change, and accordingly, 55% thereof have requested said change. * * *

"I thereupon examined the petition of the Board of Education of said School District number 74 requesting said change of boundaries and * * * find that said Board of Education of said School District Number 74 is authorized to file said petition.

"I certify that during the conduct of said hearing, while the same was in session, and before its adjournment, I separately read the original petition of each of said numbered school districts, including the list of voters certified as such in each district, and the names of the persons appearing as signers on said petition in each district requesting said addition, and considered

separately each of said petitions, and granted to each and every person present the right to challenge the correctness of the list of legal school voters as the same appears on each of said petitions and the genuineness of the signatures of the persons signing each of said petitions, and their right as legal school voters to sign the same, and I granted to legal school voters in each of said districts who were present at said hearing the right to add their names to said petition for said addition of their district, and the right to file supplemental petitions requesting said addition, and the right of any person who had already signed petitions to withdraw his name from said petitions, and the further right to retract withdrawals and permit their signatures to remain on the original petitions requesting change of boundaries, and I further certify that the foregoing record truly, correctly and fully reflects all of the acts and things considered and done at said hearing.

"I there fore find that 55% or more of the legal voters in each of said School Districts numbered 86, 134, 87, 118, 94, 88, 154, 112, 78 and 98 have lawfully petitioned to add all of their respective school districts to School District number 74 in Gage County, Nebraska. * * *

"IT IS, THEREFORE, BY ME, ORDERED AND DIRECTED that the whole of the following numbered school districts in Gage County, Nebraska, as now constituted, including all real estate within the boundaries of the same, to-wit: 86, 87, 118, 134, 94, 88, 154, 112, 78 and 98 be added to School District Number 74 in Gage County, Nebraska, and that the School District boundaries of said School District number 74 be enlarged to include all of said numbered districts and all of the territory embraced therein, * * *.

"H. W. Munson
County Superintendent of Schools,
Gage County, Nebraska"

In 49 C. J. S., Judgments, § 408, p. 809, citing numerous cases including In re Estate of Ramp, 113 Neb. 3,

201 N. W. 676, In re Guardianship of Warner, 137 Neb. 25, 288 N. W. 39, and County of Douglas v. Feenan, 146 Neb. 156, 18 N. W. 2d 740, 159 A. L. R. 569, it is said: "A collateral attack is an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it was rendered, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; any proceeding which is not instituted for the express purpose of annulling, correcting, or modifying such decree; an objection, incidentally raised in the course of the proceeding, which presents an issue collateral to the issues made by the pleadings.

"In other words, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack on the judgment is collateral. This is the case where the proceeding is founded directly on the judgment in question, or on any of its incidents or consequences as a judgment, or where the judgment forms a part of plaintiff's title or of the evidence by which his claim is supported." See, also, 34 C. J., Judgments, § 827, p. 520; 31 Am. Jur., Judgments, § 611, p. 204. Such rules are controlling here, and we conclude that plaintiffs' action was a collateral attack.

We are then confronted with the question of whether or not, in the light of the record, the order of the county superintendent was subject to collateral attack. We conclude that it was not.

This court has concluded that when petitions are filed with the county superintendent of schools requesting a change of boundaries of school districts under the provisions of section 79-402, R. S. Supp., 1953, it is his duty to give proper notice of and hold a hearing thereon and at or after such hearing to factually determine

whether or not 55 percent of the legal voters affected have lawfully petitioned the same. State ex rel. Donavan v. Palmer, 18 Neb. 644, 26 N. W. 469; State ex rel. Tanner v. Warrick, 106 Neb. 750, 184 N. W. 896; Ruwe v School District, 120 Neb. 668, 234 N. W. 789; Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566.

Section 79-402, R. S. Supp., 1953, provides in part: "The county superintendent shall create a new district from other districts, or change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected." Such provision of the section is mandatory and jurisdictional. Cowles v. School District, 23 Neb. 655, 37 N. W. 493; State ex rel. Larson v. Morrison, 155 Neb. 309, 51 N. W. 2d 626.

Thus, where the record of the proceedings before a county superintendent of schools in a proper hearing upon petitions filed under section 79-402, R. S. Supp., 1953, discloses that 55 percent or more of the legal voters of each school district affected have filed petitions requesting a change of boundaries, the county superintendent has the jurisdiction and mandatory duty to order the boundary changes requested by such petitions. Also, a hearing upon the questions so presented by such petitions and the findings and determination of facts from the evidence adduced with relation thereto, are judicial in character. In Nickel v. School Board of Axtell, *supra*, it is said: "We said in Pollock v. School District, 54 Neb. 171, 74 N. W. 393: 'The power to change the boundaries of school districts is conferred on the county superintendent by Compiled Statutes, chapter 79, subdivision 1, section 4. To authorize the exercise of such power a petition of voters of the territory affected is requisite. The power so vested in the superintendent is to a certain extent judicial in its character and subject to review. (State v. Palmer, 18 Neb. 644; State v. Clary, 25 Neb. 403.) Section 580 of the Code

of Civil Procedure (now section 25-1901, R. R. S. 1943) authorizes the review by the district court, on petition in error, of judgments rendered or final orders made by a probate court, justice of the peace, or any other tribunal, board, or officer exercising judicial functions, and inferior in jurisdiction to the district court. The provision affords an adequate remedy in such cases as the present.' " See, also, Ruwe v. School District, *supra*.

Further, where the record of the proceedings and final order affirmatively disclose that the county superintendent of schools had mandatory authority and jurisdiction to enter an order changing the boundaries of school districts under section 79-402, R. S. Supp., 1953, such order may not be collaterally attacked unless fraud is alleged, but may be reviewed by proceedings in error which provide an adequate remedy. Cases heretofore cited sustain that conclusion. See, also, School District No. 67 v. School District No. 24, 55 Neb. 716, 76 N. W. 420, wherein it is said: "An order of the county superintendent as to the formation or change of boundaries of a school district cannot be collaterally assailed where he acted within his jurisdiction. (State v. Palmer, 18 Neb. 644.) It is conceded by counsel for plaintiff that this action must fail unless the proceedings before the county superintendent consolidating the two districts were not erroneous merely, but were without jurisdiction and absolutely void; * * *." However, in such case the petition of one district and affidavit attached thereto affirmatively disclosed that the petition was fatally defective. In that respect and another unimportant here, the case is distinguishable from that at bar.

No fraud is alleged by plaintiffs herein and they admit that such an order of the county superintendent cannot be collaterally attacked unless it is void for want of authority and jurisdiction to act because of insufficiency of the legally required petitions. They rely upon State ex rel. Larson v. Morrison, *supra*. However, that case is entirely distinguishable from the one at bar. In

that case the uncontradicted record affirmatively disclosed that the petition filed with the county superintendent was signed by 14 out of 25 legal voters in the school district, but that subsequent to its filing and prior to the order of the county superintendent, which was rendered without a hearing, two such signers had withdrawn their names from the petition which they then had a right to do, so that when the order was made by the county superintendent only 12 out of the 25 legal voters actually remained on the petition, which was less than 55 percent. Thus, the county superintendent, as shown by the uncontradicted record, clearly had no authority or jurisdiction to make the order. Herein, the finding and order of the county superintendent dated May 20, 1953, attached to and made a part of plaintiffs' petition, affirmatively disclosed that after proper notice and hearing whereat legal voters from district No. 78 were present and participated, it was factually found that its petition was signed by more than 55 percent of the legal voters in such district. Thus the authority and jurisdiction of the county superintendent was existent and mandatory as affirmatively shown by the record. Thereafter no error proceedings were taken, and this action was filed more than a year after the making of such order.

The court said in Gergen v. The Western Union Life Insurance Co., 149 Neb. 203, 30 N. W. 2d 558: "This court adheres to the rule that if a court is one competent to decide whether or not the facts in any given proceeding confer jurisdiction, decides that it has jurisdiction, then its judgments entered within the scope of the subject matter over which its authority extends in proceedings following the lawful allegation of circumstances requiring the exercise of its jurisdiction, are not subject to collateral attack but conclusive against all the world unless reversed on appeal or avoided for error or fraud in a direct proceeding. Brandeen v. Lau, 113 Neb. 34,

201 N. W. 665; County of Douglas v. Feenan, 146 Neb. 156, 18 N. W. 2d 740, 159 A. L. R. 569."

In 15 C. J., Courts, § 173, p. 852, it is said: "A court having jurisdiction to decide as to its own jurisdiction in any particular case, it follows that its decision will have the same effect and conclusiveness as would its decision on any other matter within its jurisdiction; and where the jurisdiction of a court depends on a fact which it is required to ascertain, its judgment determining that such fact does or does not exist is conclusive on the question of jurisdiction, until set aside or reversed by direct proceedings." See, also, 21 C. J. S., Courts, § 115, p. 177; 34 C. J., Judgments, § 851, p. 552. In 49 C. J. S., Judgments, § 427, p. 849, it is said: "Where a court of general jurisdiction judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive, as discussed in Courts § 115, and generally cannot be controverted in a collateral proceeding, even though the decision or finding as to jurisdiction was erroneous, * * *.

"The rule is not confined to courts of general jurisdiction, but it has been held that if an inferior court or one of limited jurisdiction is charged with the ascertainment of a jurisdictional fact, and its proceedings show that the fact was ascertained, the finding cannot be collaterally attacked unless want of jurisdiction is apparent on the face of the record." The same rule applies to administrative boards and tribunals acting in a judicial capacity. See, also, 49 C. J. S., Judgments, § 421, p. 828; § 25-1901, R. R. S. 1943.

As stated in 33 C. J., Judgments, § 39, p. 1078: "Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment

void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked."

Finally, in State ex rel. Hymer v. Nelson, 21 Neb. 572, 32 N. W. 589, a case comparable in principle, this court said: "It will thus be seen that the defendants were the proper persons to determine, in the first instance at least, whether the petition presented to them was signed by resident electors of said county equal in number to three-fifths of all the votes cast therein at the last general election.

"In Smiley v. Samson, 1 Neb., 56, it was held that the power to hear and determine the matter in controversy was jurisdiction, and that it is coram judice whenever a case is presented which brings the power into action. * * * If the decision of said board was unsatisfactory to the petitioners it was subject to review by the district court, and the error, if any, could thereby be corrected. No fraud is charged, and such decision cannot be treated as void, nor can the errors of the board be corrected in this proceeding." Also, in State ex rel. Sorensen v. Knudtsen, 121 Neb. 270, 236 N. W. 696, it is said: "This court is committed to the doctrine that: 'The power to hear and determine a matter in controversy is jurisdiction. It is coram judice, whenever a case is presented which brings the power into action. It may be exercised according to the rules of the common law, or by special direction, or informally.' Smiley v. Sampson, 1 Neb. 56. Further, the action of a special tribunal created by statute, to ascertain and declare the existence or non-existence of certain facts, is judicial in its nature, and the determination thereof constitutes a final order which cannot be collaterally impeached. State v. Nelson, 21 Neb. 572; State v. Houston, 94 Neb. 445; State v. Morehead, 101 Neb. 37; State v. Stevens, 78 N. H. 268; 34 C. J. 519, 878. The only conclusion consistent with the pronouncements just referred to is that, if the secretary of agriculture erred in the instant proceeding in determining from evidence adduced that the petitions before

him, fair and regular in form, were sufficient to authorize him to create Cedar county an accredited area for testing cattle, it was an error subject to review, if at all, by a direct proceeding; that his action and order thus made are not subject to collateral attack (Peverill v. Board of Supervisors, 208 Ia. 94); * * *." See, also, Burkley v. City of Omaha, 102 Neb. 308, 167 N. W. 72.

Other matters are presented in briefs of counsel but they require no discussion. The foregoing rules are controlling here, and, for reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.